Sally Barber appeals an order *Page 392 
requiring her to reimburse her ex-husband for day care expenses she did not incur. We hold that the reimbursement provisions of RCW 26.19.080
(3) are mandatory for overpayments after June 6, 1996. But because we hold that the trial court erred by failing to consider whether or not the doctrines of equitable estoppel and laches prevent Brian Barber from bringing the reimbursement claim, we remand for further proceedings.
 FACTS
Brian Barber paid his ex-wife, Sally Barber, child support and day care expenses under a February 25, 1994, decree of dissolution. The court ordered Brian[1] to pay $541.94 in monthly child support for their two daughters, then aged 9 and 7. This amount included $453.76 in basic support and $88.20 in day care expenses. The child support order provided that "[c]hild support shall be adjusted . . . [e]very two years. . . ." Clerk's Papers at 8. But neither party sought a change in the decree until 1999.
On October 6, 1999, Sally filed a Petition for Support Modification, based on special expenses due to their elder daughter's involvement in the juvenile justice system. In response, Brian filed a Motion for Refund of Day Care pursuant to RCW 26.19.080(3). Brian requested that the court require Sally to disclose when she ceased incurring day care expenses, and he sought reimbursement for day care expenses that she did not incur after that date in the amount of $88.20 per month.
In late 1994, Sally had moved the children from a day care facility to in-home childcare. At some point, the children no longer required day care. Sally claims that she and Brian agreed not to change Brian's payments for day care expenses because any change would have been offset by an increase in his child support obligation due to his increased income. Brian denies that they discussed the issue and denies the agreement. *Page 393 
In Findings of Fact dated December 7, 1999, a court commissioner granted Brian's request for reimbursement and found that the reimbursement should be offset against an increased child support obligation retroactive to February 1996, two years following the initial decree.[2] On Brian's motion to revise, the superior court revised the commissioner's ruling, vacated the offset of the retroactive child support obligation, and ordered Sally to reimburse Brian $5,242.88 for day care costs not incurred, plus interest.[3] Sally appeals, arguing that the superior court should have considered equitable relief and that equitable estoppel and laches bar Brian from seeking reimbursement for the day care expenses.
 DISCUSSION I. Mandatory Reimbursement Provision of RCW 26.19.080(3).
Generally, a court cannot grant equitable relief when a statute provides specific relief. "Equity does not intervene when there is a complete and adequate remedy at law." Ballard v. Wooster, 182 Wn. 408, 413, 45 P.2d 511 (1935), cited with approval in Roon v. King County,24 Wn.2d 519, 526, 166 P.2d 165 (1946); see also Tyler Pipe Industries,Inc. v. Dept. of Revenue, 96 Wn.2d 785, 789, 638 P.2d 1213 (1982). In 1996, the Legislature amended RCW 26.19.080(3), adding the following italicized language:
 Day care and special child rearing expenses, such as tuition and long-distance transportation costs to and from the parents for visitation purposes, are not included in the economic table. These expenses shall be shared by the parents in the same *Page 394 
proportion as the basic child support obligation. If an obligor pays court or administratively ordered day care or special child rearing expenses that are not actually incurred, the obligee must reimburse the obligor for the overpayment if the overpayment amounts to at least twenty percent of the obligor's annual day care or special child rearing expenses. The obligor may institute an action in the superior court or file an application for an adjudicative hearing with the department of social and health services for reimbursement of day care and special child rearing expense overpayments that amount to twenty percent or more of the obligor's annual day care and special child rearing expenses. Any ordered overpayment reimbursement shall be applied first as an offset to child support arrearages of the obligor. If the obligor does not have child support arrearages, the reimbursement may be in the form of a direct reimbursement by the obligee or a credit against the obligor's future support payments. If the reimbursement is in the form of a credit against the obligor's future child support payments, the credit shall be spread equally over a twelve-month period. Absent agreement of the obligee, nothing in this section entitles an obligor to pay more than his or her proportionate share of day care or other special child rearing expenses in advance and then deduct the overpayment from future support transfer payments.
RCW 26.19.080(3) (emphasis added).
In In re Marriage of Hawthorne, 91 Wn. App. 965, 957 P.2d 1296 (1998), Division One of this court held that the 1996 amendment did "not create a new right of action but merely clarifie[d] the procedures the obligor may use to recoup payments made for daycare expenses which are not incurred."Hawthorne, 91 Wn. App. at 969. By focusing on the amendment's procedural remedy,[4] however, the Hawthorne court treated as surplusage the portion of the amendment that created a substantive obligation for mandatory reimbursement. A legislative body is presumed not to have used superfluous words, and we are bound to accord meaning, if possible, to every word in a statute. Applied *Page 395 Indus. Materials Corp. v. Melton, 74 Wn. App. 73, 79, 872 P.2d 87
(1994); State v. Lundquist, 60 Wn.2d 397, 403, 374 P.2d 246 (1962). We believe the Hawthorne interpretation fails to give full weight to that portion of the amendment mandating repayment; a new statutory right. Thus, if equitable principles do not prevent Brian from bringing a motion to reimburse under RCW 26.19.080(3), Sally must reimburse him for overpayments she received after June 6, 1996, the effective date of the amendment, if the overpayments amounted to at least 20 percent of Brian's annual day care or special child rearing expenses.
Reimbursement of overpayments made prior to June 6, 1996, is not mandatory, although a limited right to reimbursement may exist under equitable common-law principles in certain circumstances. Hawthorne, 91 Wn. App. at 968 (citing In re Marriage of Stern, 68 Wn. App. 922, 932,846 P.2d 1387 (1993)). Sally's mandatory statutory obligation to reimburse Brian for the day care expenses she had not actually incurred did not exist prior to June 6, 1996. The superior court erred in refusing to consider equitable defenses as to that portion of the overpayment alleged to have occurred prior to the effective date of the amendment.
 II. Equitable estoppel and laches as bar to request for reimbursement of day care expenses.
Sally asserts that the trial court erred "when it did not consider equitable relief" for her. Assignment of Error No. 1, Brief of Appellant at 2. Specifically, she alleges that equitable estoppel and laches bar Brian's claim for reimbursement. No findings were entered on the issue, and it is not clear whether the trial court decided not to apply equitable estoppel and laches because it concluded that they could not be applied to RCW 26.19.080(3) under any circumstances, or because it concluded that the elements of these doctrines were not met in this case.
As we set forth above, the court may apply equitable principles to reimbursement claims for overpayments made before June 6, 1996. Overpayment reimbursement claims properly brought and proved under the statute arising after *Page 396 
the effective date of the statute, however, are mandatory, unless the claim itself is barred by equitable doctrines. We hold that equitable principles may bar an action for reimbursement under RCW 26.19.080(3) in the appropriate circumstances.
 "The doctrine of equitable estoppel rests on the principle that where a person, by his acts or representations, causes another to change his position or to refrain from performing a necessary act to such person's detriment or prejudice, the person who performs such acts or makes such representations is precluded from asserting the conduct or forbearance of the other party to his own advantage."
Hartman v. Smith, 100 Wn.2d 766, 769, 674 P.2d 176 (1984) (quotingDickson v. United States Fid. Guar. Co., 77 Wn.2d 785, 788, 466 P.2d 515
(1970)). On remand, the trial court must decide whether or not equitable estoppel or laches bars Brian from bringing an action for reimbursement under the statute.
To prevail on her argument that collateral estoppel bars Brian's reimbursement claim, on remand Sally must establish "(1) an admission, statement, or act inconsistent with the claim afterward asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury resulting from allowing the first party to contradict or repudiate [such admission, statement, or act]." In re Marriage ofHunter, 52 Wn. App. 265, 271, 758 P.2d 1019 (1988) (alteration in original) (quoting Roy v. Cunningham, 46 Wn. App. 409, 415, 731 P.2d 526
(1986)). Courts do not favor equitable estoppel, and the party asserting it must prove every element with clear, cogent, and convincing evidence.In re Marriage of Sanborn, 55 Wn. App. 124, 129, 777 P.2d 4 (1989).
 "[L]aches in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so *Page 397 
changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right. When a court sees negligence on one side and injury therefrom on the other it is a ground for denial of relief."
Crodle v. Dodge, 99 Wn. 121, 131, 168 P. 986 (1917) (quoting 10 R.C.L. 396) (cited with approval in Brost v. L.A.N.D., Inc., 37 Wn. App. 372, 375-76, 680 P.2d 453 (1984)).
"Laches is an extraordinary remedy to prevent injustice and hardship and should not be employed as `a mere artificial excuse for denying to a litigant that which . . . he is fairly entitled to receive. . . .'"Brost, 37 Wn. App. at 376 (quoting Crodle, 99 Wn. at 131). To prevail on her argument that the doctrine of laches prevents Brian from seeking reimbursement of overpayment of day care expenses, on remand Sally must establish that (1) Brian had knowledge of the facts constituting a cause of action or a reasonable opportunity to discover such facts;[5] (2) there was an unreasonable delay in commencing the action; and (3) the delay damaged her. See Hunter, 52 Wn. App. at 270.
 III. Retroactive adjustment of support.
Sally also asserts that the trial court "erred when it held that the [commissioner's] adjustment of support provision was a `modification' of support and could not have retroactive effect." Brief of Appellant at 2. This claim misstates the court's ruling. In its order of March 3, 2000, the superior court found that "[t]he Commissioner committed an error of law when he ordered consideration of the adjustment *Page 398 
provision of the 1994 child support order . . . because an adjustment in support may not be given retroactive effect." Clerk's Papers at 104-05.
The provisions of any child support decree may be modified only as to installments accruing subsequent to the petition for modification or motion for adjustment except motions to compel court-ordered adjustments, which shall be effective as of the first date specified in the decree for implementing the adjustment. RCW 26.09.170(1)(a). Sally filed her petition for support modification on October 6, 1999. The court had authority to modify only those installments accruing after that date.[6] Additionally, RCW 26.19.080(3) expressly allocates reimbursement terms[7] but does not allow reimbursements to be offset against anticipatory child support increases. The superior court did not err in revising the commissioner's ruling to eliminate the offset.
In summary, we hold that reimbursement of overpaid day care or special child rearing expenses pursuant to RCW 26.19.080(3) is generally mandatory for payments made after June 6, 1996. But nothing in RCW26.19.080(3) prevents the party receiving the alleged overpayment from raising equitable defenses, including laches and equitable estoppel, as a bar to a request for mandatory reimbursement for overpaid day care costs under this statute. We remand this matter to the trial court to consider 1) whether or not equitable estoppel or laches bars Brian's entire request for reimbursement under RCW 26.19.080(3) *Page 399 
and, if not, 2) whether equity warrants reimbursement to Brian of day care costs paid from February 1994 through June 6, 1996, in addition to the mandatory reimbursement of the amounts paid after June 6, 1996.
HUNT, A.C.J., and MORGAN, J., concur.
[1] The first names of the parties are used for the ease and clarity of the reader. We mean no disrespect.
[2] The commissioner's Order of Child Support, however, did not mention the reimbursement of day care expenses or the retroactive modification of child support.
[3] The superior court's order for reimbursement of day care included an offset of $757 for back child support owed. "Any ordered overpayment reimbursement shall be applied first as an offset to child support arrearages of the obligor." RCW 26.19.080(3).
[4] "The obligor may institute an action . . ." RCW 26.19.080(3). See full text of amendment above.
[5] We note that at the time of the February 1994 child support calculations both children were in the "A" age group. The child support worksheets indicate a total combined monthly income of $3,932.15. Under the economic table of RCW 26.19.020, the basic child support obligation for each age "A" child in a two-child family was $463. On April 19, 1996 the Barber's elder daughter turned 12. Under the economic table of RCW26.19.020, she would then be classified as a "B" child. Assuming the same income and proportion, Brian's support obligation would have increased by $53.40. On August 12, 1998, assuming the same income and proportion, Brian's support would have increased another $53.40 under the standard statutory child support guidelines when his second child became a "B" child. At the time Brian moved for reimbursement, his elder daughter was 15 and his younger daughter was 13 years old.
[6] The court granted Sally's request for a prospective modification effective November 1999. Neither party has appealed that modification.
[7] Any ordered overpayment reimbursement shall be applied first as an offset to child support arrearages of the obligor. If the obligor does not have child support arrearages, the reimbursement may be in the form of a direct reimbursement by the obligee or a credit against the obligor's future support payments. If the reimbursement is in the form of a credit against the obligor's future child support payments, the credit shall be spread equally over a twelve-month period. RCW 26.19.080(3) (part).