38 P.3d 1033 (2002)
In re MARRIAGE OF Amineh A. AYYAD, Appellant, and
Mohammad Rashid, Respondent.
No. 46959-2-I.
Court of Appeals of Washington, Division 1.
January 28, 2002.
As Amended on Denial of Reconsideration March 19, 2002.
*1034 Helmut Kah, Woodinville, for Appellant.
Catherine Smith, Edwards Sieh Smith & Goodfriend, Teresa McNally, Preson Gates & Ellis, Seattle, for Respondent.
WEBSTER, J.
Amineh Ayyad and Mohammad Rashid divorced in 1993 and agreed upon child support and other matters in the dissolution decree. The decree contained a provision for annual adjustments in child support, based upon the parties' income and other relevant factors. Following the divorce, Rashid's wealth increased substantially with the rising value of his Microsoft stock options, as did his income as he exercised and cashed in vested stock options. In September 1999, Ayyad sought adjustments for 1998 and 1999. A court commissioner denied any increase in the transfer payment from that which was set in the adjustment for 1997. The trial court denied Ayyad's motion for revision. Ayyad appeals, arguing that the trial court erred in calculating the father's income by not including his exercise of stock options, bonuses, dividends, interest and contributions to a retirement savings plan, and by awarding too little in attorney fees. We reverse in part, and remand. The court should have included Rashid's income from the exercise of stock options in his worksheet income, and the court based the modest award of attorney fees on an untenable basis.

*1035 FACTS
Mohammad Rashid and Amineh Ayyad divorced in June 1993 after having one child together. A child support order attached to the divorce decree required Rashid to pay $600 per month as a transfer payment plus all day care and special expenses, the costs of skill development classes, and $1,200 for an annual clothing allowance. To account for changes in income, the child support order provided for annual adjustments: "Annually on August 1 of each year based upon the parties' income and other relevant factors which exist at the time of adjustment." Clerk's Papers (CP) at 1824.
In September 1997, Ayyad obtained a court-ordered adjustment that increased Rashid's transfer payment to $1,240.64 per month. Although the standard calculation for Rashid was $740.64 per month at that time, the court commissioner approved a deviation upward based on his possession of wealth-in excess of $2,000,000 at the time, and substantially comprised of Microsoft stock options. On revision, the court approved the commissioner's order but made Ayyad responsible for 16.5 percent of their child's special and extraordinary expenses.
Ayyad moved for adjustment again in September 1999, for the years 1998 and 1999. Although the court commissioner pro tem increased the annual clothing allowance to $1,800, he left the transfer payment essentially the same as set in 1997, at $1,245 per month. Citing the law of the case and the absence of a motion to modify, the commissioner pro tem refused to consider Rashid's exercised stock options as income but treated them as wealth for deviation purposes. The commissioner pro tem awarded Ayyad $3,500 in attorney fees. On revision, the court reversed the commissioner pro tem's ruling, ruling that the law of the case did not prohibit considering the stock options as income and that a motion to modify was not necessary to make such an adjudication. It is clear from the record that the court made no conclusion as to whether the stock options are or are not income, except to say that the exercise of vested Microsoft stock options would not constitute income if left as Microsoft stock rather than cashed in. The court remanded to a full-time commissioner.
On remand, the commissioner found that Rashid earned a net income of $6,164.48 per month in 1998, and $7,408.79 in 1999 (excluding stock options). In contrast, Ayyad earned a net income of $1,016.97 in 1998, and $1,568.53 in 1999. Their combined monthly net income exceeded $7,000 per month, the highest category in the statutory economic table. RCW 26.19.020. Because Rashid exercised his Microsoft stock options primarily to diversify his asset holdings rather than to increase his standard of living, and because the court had previously considered the options as wealth rather than as income in setting the 1997 Child Support Order, the commissioner did not consider Rashid's exercise of stock options in calculating his net income. Even if it was income, she explained that she would not change the transfer payment after considering all the statutory factors. The commissioner kept the transfer payment at the 1997 level, kept the additional clothing allowance at $1,200 per year and increased the mother's proportionate share of the child's special and extraordinary expenses. The commissioner awarded Ayyad $1500 for attorney fees, stating that it was on the basis of need and ability to pay, but stating further: "The Court does not grant further attorney's fees as the Petitioner pursued this case beyond the extent that was necessary." Clerk's Papers at 1631.
On revision, the court upheld the commissioner's ruling, stating that the child should not have more lavish lifestyle than the obligor parent when all support needs are met. Ayyad appeals.

DISCUSSION

I.

Support Transfer Payment
We review child support modifications and adjustments for abuse of discretion. In re Marriage of Griffin, 114 Wash.2d 772, 776, 791 P.2d 519 (1990). Generally, a parent may seek an adjustment to child support obligations once every 24 months based on changes in income. RCW 26.09.170(8)(a). A dissolution decree, however, may provide for automatic periodic adjustments more frequently than every two years. RCW 26.09.100(2). Here, the original decree provided *1036 for annual adjustments based on changes in income and other relevant factors. Such adjustments are made on the basis of the statutory child support schedule. RCW 26.09.100(2) (citing chapter 26.19 RCW).
In establishing the child support schedule, the legislature intended to insure that every child support order meets the child's basic needs and provides additional financial support commensurate with the parents' income, resources and standards of living. RCW 26.19.001; In re Marriage of Leslie, 90 Wash.App. 796, 803, 954 P.2d 330 (1998). In addition, the legislature intended to equitably apportion the child support obligation between both parents. RCW 26.19.001. To meet these goals in determining the child support obligation, the trial court first determines the income of each parent. RCW 26.19.071(1). The court considers each parent's monthly gross income from all sources, including but not limited to salaries, wages, deferred compensation, contract-related benefits, dividends, interest, capital gains and bonuses. RCW 26.19.071(3). From each parent's monthly gross income, the court deducts federal income taxes, among other items, to arrive at each parent's monthly net income. RCW 26.19.071(5).
Ayyad argues that the trial court erred by excluding the exercise of stock options from the income determination.[1] A stock option is the right to purchase a specified number of shares of a designated stock for a particular price during a stated period of time, regardless of shifts in the market price during the period. In re Marriage of Harrington, 85 Wash.App. 613, 624, 935 P.2d 1357 (1997); Black's Law Dictionary 1431 (7th ed.1999). A stock option grant from a corporation to its employee is usually a form of compensation. Black's Law Dictionary 1431. It becomes a vested and matured right when the employee can exercise the option anytime by payment of the option price. Harrington, 85 Wash. App. at 625, 935 P.2d 1357. Here, the record reflects that the options at issue are "non-qualified" (incentive) options, which are treated as wages for federal income tax purposes when exercised and cashed in. CP at 725 (letter from Rashid's accountant explaining tax treatment of non-qualified stock options). See 26 U.S.C. § 422 (defining and describing tax treatment of incentive stock options). Consistent with this, the exercised stock options were reported as compensation on Rashid's 1040 tax returns. According to Rashid's 1999 tax return, for example, he had taxable income of $1,758,272 and net after-tax income of $1,096,893, inclusive of the exercised stock options. Nevertheless, the commissioner calculated Rashid's monthly net income as $6,164.48 in 1998, and $7,408.79 in 1999, by excluding the exercised stock options. The court said that if the exercised options had been included for 1999, Rashid's net monthly income would have been $89,000, a figure that Ayyad does not challenge.[2]
The trial court reasoned that the exercised options should be excluded because, although Rashid converted every exercised stock options to cash rather than leaving them in Microsoft stock, Rashid used the proceeds primarily to diversify his holdings, rather than to substantially increase his standard of living. For example, he purchased some land in the Middle East and acquired stock in companies other than Microsoft. According to the commissioner, the exercise of the stock options merely resulted in a *1037 redistribution of the wealth that was previously considered by the court in establishing the 1997 Child Support Order. Regardless of this rationale, RCW 26.19.071(1) mandates that the court consider all income and resources of each parent. In a motion for adjustment, the court makes a new determination of income based on all sources except those specifically excluded by RCW 26.19.071(4). Because the statute does not exclude proceeds from the exercise and cashing in of stock options, we hold that the court should have included them in the income calculation. Contrary to Rashid's assertions, the calculation does not result in double counting so long as the court properly includes only exercised stock options converted to cash and leaves other stock options aside to be considered as wealth for deviation purposesa distinction that is easy to make based on Rashid's stock option records and federal income tax returns.
Rashid argues that remand is not necessary in this case because the parents' combined monthly income exceeds $7,000 per month and the trial court indicated that the transfer payment would be the same in any event, even if Rashid's net monthly income were calculated to be $89,000. The economic table contained in RCW 26.19.020 provides the standard calculation only up to a combined monthly net income of $7,000. When combined monthly net income exceeds $7,000, the court may (1) set the basic child support obligation at an advisory amount established for incomes between $5,000 and $7,000, or (2) exceed the highest advisory amount upon written findings of fact. RCW 26.19.020, .065(3). Here, the trial court set the basic child support obligation for 1999 at $986 per month (the highest advisory amount for a combined monthly net income of $7,000). The court then deviated upward from the advisory amount, and ordered Rashid to pay a monthly transfer payment of $1,240.64 for three reasons: 1) he possessed wealth; 2) the child's lifestyle required the deviation; and 3) he agreed to pay that amount. See RCW 26.19.020, .075. Moreover, the commissioner ordered Rashid to continue to pay the additional $1,200 per year for clothing expenses that had been provided in the original decree, as well as the child's skill development expenses. We agree with Rashid that in making this particular ruling, the court properly considered the child's basic needs in addition to the parents' income, resources and standards of living. Leslie, 90 Wash.App. at 804, 954 P.2d 330. On revision, the court emphasized the standard of living factor in relation to the child's needs: "The law does not anticipate that a child should have a life style [sic] more lavish [than] the obligor parent's when all support needs are met...." CP at 1714. Because the court fully examined the factors set out in Leslie, 90 Wash.App. at 804, 954 P.2d 330, and because Ayyad has shown us nothing in the record that demonstrates that the transfer payment, clothing contribution and skill development expenses do not meet the child's need for support, we conclude that the court did not abuse its discretion in determining that the child support transfer payment would remain the same even if the father's monthly net income were properly calculated to be $89,000. Accordingly, the court need not reconsider the transfer payment, following our remand.
Ayyad also made a motion for adjustment for 1998. Rashid argues that we should affirm the court's 1998 adjustment on the basis that it constituted a retroactive adjustment of the 1997 order contrary to RCW 26.09.170(1)(a). Although child support adjustments and modifications usually are not retroactive, there is an exception for motions to compel court-ordered adjustments. RCW 26.09.170(1)(a). Court-ordered adjustments are effective on the date specified in the decree. RCW 26.09.170(1)(a). Here, the original decree mandates adjustments annually on August 1. We consider Ayyad's motion for adjustment equivalent to a motion to compel the automatic adjustment clause.[3] Contrary to Rashid's assertion, RCW *1038 26.09.170(1)(a) enforces automatic adjustments even when the parents' combined income exceeds $7,000. Consequently, we reject Rashid's proposed alternate basis for affirming the 1998 order, and affirm only the transfer payment for the same reasons as the 1999 order.

II.

Proportionate Expenses
In addition to the support transfer payment, the 1998 and 1999 orders required Rashid pay 82.5% of the child's day care and skill development expenses, and 87.5 percent of the child's extraordinary health care expenses, and required Ayyad to pay the remainder. Ayyad contends that the trial court's failure to include the exercise of stock options in Rashid's income leaves her with a disproportionate share of these variable expenses. We agree. Failure to properly calculate income normally results in remand for recalculation. In re Marriage of Briscoe, 134 Wash.2d 344, 349, 949 P.2d 1388 (1998) (citing In re Marriage of Maples, 78 Wash. App. 696, 707, 899 P.2d 1 (1995)). Relying on Briscoe, Rashid argues that we need not remand in this case. In Briscoe, the trial court erred by excluding certain disability benefits from the income determination. Briscoe, 134 Wash.2d at 349, 949 P.2d 1388. The Washington Supreme Court held that it was unnecessary to remand for recalculation when the ordered support exceeded the amount set by the child support schedule even if modified by inclusion of the disability payments. Briscoe, 134 Wash.2d at 347, 349, 949 P.2d 1388. Briscoe is distinguishable because the disability payments constituted a fixed amount. Briscoe, 134 Wash.2d at 346, 949 P.2d 1388. There, the Supreme Court could easily determine that the support transfer payment would cover any shortfall. Here, however, the special and extraordinary expenses vary depending on the needs of the child. Extraordinary health expenses could increase dramatically in any given year, forcing Ayyad to pay disproportionately because the trial court failed to include stock options in its income determination. We remand for a recalculation of income that includes the exercised stock options that were cashed in, so that the variable expenses are proportionate to the parents' respective incomes.
Rashid also contends that the trial court erred by adjusting the proportionate expenses retroactively. We disagree. RCW 26.09.170(1)(a) allows a court to enforce its previously ordered automatic adjustments effective the date specified in the decree. In this case, the date is August 1. We find no error.

III.

Attorney Fees
Ayyad argues that the trial court abused its discretion in granting her only $1,500 in attorney fees. RCW 26.09.140 allows a court to award reasonable attorney fees after considering the financial resources of both parties. Using its discretion, the court balances the requesting party's need *1039 for a fee award against the other party's ability to pay. Leslie, 90 Wash.App. at 805, 954 P.2d 330. If the court makes an award, it must state on the record the method it used to calculate the award. In re Marriage of Knight, 75 Wash.App. 721, 729, 880 P.2d 71 (1994). In calculating a reasonable amount of fees, the court should consider the following three factors: (1) the factual and legal questions involved; (2) the amount of time necessary for preparation and presentation of the case; and (3) the value and character of the property involved. In re Marriage of Foley, 84 Wash.App. 839, 846-47, 930 P.2d 929 (1997); Knight, 75 Wash.App. at 730, 880 P.2d 71. A party challenging the award has the burden to prove that the trial court abused its discretion by making a decision that is clearly untenable or manifestly unreasonable. In re Marriage of Mattson, 95 Wash.App. 592, 604, 976 P.2d 157 (1999).
Here, the commissioner awarded Ayyad $1,500 in attorney fees purportedly based on her need and Rashid's ability to pay, but stated further: "The Court does not grant further attorney's fees as the Petitioner pursued this case beyond the extent that was necessary." CP at 1631. On revision, the trial court affirmed the commissioner's ruling without comment. To the contrary, we conclude that the petitioner did not pursue the matter beyond the extent that was necessary, as should be apparent from the result of this appeal. On remand, the court shall make a new attorney fee determination based on Ayyad's need at the time of the litigation below, Rashid's ability to pay at that time, and the three factors listed above.
Ayyad requests attorney fees and costs on appeal. RCW 26.09.140 gives the appellate court discretion in awarding such fees based on the requesting party's need and the other party's ability to pay. Leslie, 90 Wash.App. at 807, 954 P.2d 330. Ayyad's financial position has dramatically improved while this appeal was pending. She should no longer have the need for such an award once this Court issues the mandate for In re Marriage of Ayyad, No. 44358-5-I, 102 Wash.App. 1054, 2000 WL 1482643 (2000), review denied, No. 70806-1, 143 Wash.2d 1017 (May 1, 2001). In that case, this Court awarded Ayyad one half of the stock options not distributed by the parties' property settlement agreement. Rashid has conceded in his financial declaration to this Court that he received 48,580 split-adjusted stock options on January 14, 1991 and 14,400 split-adjusted stock options on July 7, 1992. According to his declaration, the exercise prices are currently $2.1319 per share for the 1991 grant and $4.25 per share for the 1992 grant. Although the trial court has yet to determine the exact award in that case, it seems virtually certain that Ayyad will have substantial ability to pay her attorney fees and costs on appeal. We deny her request.

CONCLUSION
Notwithstanding the trial court's erroneous exclusion of the exercised stock options from Rashid's worksheet income, Ayyad has not shown that the trial court's determination that the transfer payment would remain the same even if the exercised options had been included was an abuse of discretion, in that the parent's income exceeded $7000 even without the exercised options, and Ayyad has not shown that the transfer payment failed to meet the child's need for support, particularly in light of the other expenses that Rashid pays for the child, such as clothing, and skills development. In addition, Rashid has not utilized his wealth to substantially improve his own standard of living, preferring instead to plan for the future by diversifying his holdings. But the failure to include the exercised stock options resulted in Ayyad assuming responsibility for more than her proportionate share of the child's other expenses not covered by the transfer payments. And the trial court based its award of attorney fees on an untenable ground. We reverse in part and remand to the trial court to prepare new worksheets and recalculate the proportionate expenses for 1998 and 1999 after reflecting the exercised stock options in income, and to reconsider the amount of attorney fees awarded to Ayyad for the support adjustment proceedings.
Affirmed in part and reversed in part.
WE CONCUR: KENNEDY, Presiding C.J., and GROSSE, J.
NOTES
[1] She also asserts that the trial court excluded income from bonuses, dividends, interest and contributions to his Savings Plus Plan, which apparently is a form of retirement plan. We cannot determine from studying the trial court's child support worksheets whether bonuses, dividends, interest and savings plan contributions were included or omitted. An appellate court will not consider an inadequately briefed argument. State v. Wheaton, 121 Wash.2d 347, 365, 850 P.2d 507 (1993). Ayyad has failed to identify specific bonuses, dividends and interest in her brief and has not informed this Court on how to treat the Savings Plus Plan. We are unable to rule on these issues. On remand, we simply direct the trial court to calculate worksheet income in accordance with the statutory requirements, including all income as required by law.
[2] Rashid argues that the law of the case doctrine barred the trial court from treating the stock options as income because the original decree excluded exercised stock option proceeds from the income determination, citing In re Marriage of Trichak, 72 Wash.App. 21, 23-24, 863 P.2d 585 (1993). Because the stock options in this case involve various grant dates, vesting dates and exercise dates subsequent to the original decree, we find that the doctrine does not apply. Moreover, it does not appear that the treatment of exercised stock options was particularly at issue, at the time of the dissolution decree.
[3] But see In re Marriage of Barber, 106 Wash. App. 390, 397, 23 P.3d 1106, (2001). In Barber, a 1994 decree mandated child support adjustments every two years. Barber, 106 Wash.App. at 392, 23 P.3d 1106. Because Sally Barber did not file her petition for support adjustment until October 6, 1999, the trial court denied any retroactive effect. Barber, 106 Wash.App. at 397, 23 P.3d 1106. Division Two affirmed. We construe RCW 26.09.170(1)(a) as providing a court with the authority to enforce its own automatic adjustment clauses as previously ordered. The 1994 court-ordered automatic adjustment clause in Barber should have allowed the court to order a retroactive adjustment. Nevertheless, a court can decline to do so on the basis of laches, or other recognized equitable grounds, and a long delay in seeking to enforce an automatic periodic adjustment might, in some cases, justify prospective adjustment only.

We reject Rashid's contention that this ruling is contrary to this court's opinion in In re Marriage of Abercrombie, 105 Wash.App. 239, 19 P.3d 1056 (2001). Although the Abercrombie court ruled that a similarly worded annual adjustment clause in the decree in that case was not an automatic periodic adjustment clause within the meaning of RCW 26.09.100(2), the case is distinguishable from this one. As the Abercrombie court pointed out, the decree in that case was entered before the Legislature adopted the automatic periodic adjustment provision contained in RCW 26.09.100(2). 105 Wash.App. at 243, n.2, 19 P.3d 1056. More importantly, however, neither party in that case had appealed an earlier trial court ruling that the annual increase clause in that case was unenforceable, and the appellant did not rely on RCW 26.09.100(2), in any event. We also note that neither party in that case had ever attempted to enforce the annual adjustment clause in the ten-year period following entry of the decree, nor had they at the time of the appeal. Instead, the appellant sought to invoke the clause for purposes of calculating child support arrearages that had accrued over the ten-year period following entry of the decree of dissolution of marriage.