IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Parenting and Support of E.J.S., a minor child, | ) ) ) | No. 80912-1-I |
| BRIAN MICHAEL RIBNICKY, | ) ) | |
| Appellant, | ) ) | ORDER GRANTING MOTION FOR RECONSIDERATION, |
| and | ) ) ) | WITHDRAWING & REPLACING OPINION |
| KATI J. SOTANIEMI, | ) ) | |
| Respondent. | ) ) ) | |

Respondent filed a motion for reconsideration of the court's opinion filed February 16, 2021. The court has considered the motion and determined that reconsideration should be granted, the opinion filed February 16, 2021 should be withdrawn and a revised opinion filed.

Now, therefore, it is hereby

ORDERED that respondent's motion for reconsideration is granted. It is further

ORDERED that the opinion of this court filed February 16, 2021 is withdrawn and a revised opinion shall be filed.

_____

_____            _____
Andrus, A.C.J.                              Mann, C.J.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In re the Parenting and Support of E.J.S., a minor child, | ) **)** ) | No. 80912-1-I |
| BRIAN MICHAEL RIBNICKY, | ) ) | |
| Appellant, | ) ) | |
| and | ) ) | |
| KATI J. SOTANIEMI, | ) ) | PUBLISHED OPINION |
| Respondent. | ) ) | |

VERELLEN, J. — Child support calculations broadly include "[a]ll income . . . from any source" unless expressly excluded by the child support statute.[1] Consistent with the dictionary definition, "income" for purposes of the child support statute, includes "a gain" received as compensation.[2] Restricted stock units (RSUs) are a form of equity-based compensation consisting of contractual promises by an employer to deliver shares of stock at a future date once the RSUs have vested. Once vested and delivered, RSUs are taxed as ordinary income to the employee.

Kati Sotaniemi, the mother, received RSUs as part of her compensation from her employer. Sotaniemi's employer delivered shares of stock to her once

---

[1] RCW 26.19.071(1), (3).

[2] WEBSTER'S THIRD NEW INT'L DICTIONARY 1143 (2002).

the RSUs vested. The market value of the vested and delivered shares of stock were taxed as ordinary income. We conclude her vested RSUs with the resulting delivered stock are a "gain" that qualifies as "income" for purposes of the child support statute, RCW 26.19.071 and are not "specifically excluded" under .071(4). Therefore, the trial court abused its discretion in excluding Sotaniemi's vested and delivered RSUs from her income for child support purposes.

Sotaniemi is not entitled to attorney fees based on Ribnicky's intransigence because Ribnicky provided an adequate record and briefing in support of a debatable question.

Therefore, we reverse and remand for further proceedings consistent with this opinion.

## FACTS

Brian Ribnicky and Kati Sotaniemi have one child, E.J.S., who lives primarily with Sotaniemi. In 2017, the trial court entered the final parenting plan and child support order.[3]

The court ordered Ribnicky to pay $1,484.48 monthly to Sotaniemi for child support, which included his proportionate share of E.J.S.'s preschool tuition.

---

[3] Ribnicky previously appealed the 2017 parenting plan and child support order. In that appeal, due to "the limited record and briefing," we declined to address Ribnicky's argument that Sotaniemi's vested RSUs should have been counted as income for the 2017 child support determination. In re Parenting of E.J.S., No. 77854-4-I, slip op. at 23 (Wash. Ct. App. Dec. 10, 2018) (unpublished), www.courts.wa.gov/opinions/pdf/778544.pdf, review denied, 193 Wn.2d 1021 (2019).

On September 16, 2019, Ribnicky filed a motion to adjust the 2017 child support order because Sotaniemi's income increased and the parents had enrolled E.J.S. in public school.

Sotaniemi, an attorney for Microsoft, earns a base salary. In September 2019, she also received a nonguaranteed bonus. And she receives RSUs as part of her compensation.

At the October 17, 2019 hearing, the trial court commissioner adopted the income figure proposed by Sotaniemi, which did not include the value of her RSUs. The commissioner found that Sotaniemi's monthly net income was more than twice the amount of Ribnicky's and accordingly awarded their proportionate share of child support as 68.5 percent/31.5 percent.

In October 2019, Ribnicky filed a motion to revise the commissioner's order, which the trial court denied. The trial court reasoned that under In re Marriage of Ayyad,[4] Sotaniemi's "non-liquidated RSU's should not be treated as income for calculation of child support."[5]

Ribnicky appeals.

ANALYSIS

I. Restricted stock units (RSUs)

Ribnicky argues that vested RSUs are income under the child support statute.

---

[4] In re Marriage of Ayyad, 110 Wn. App. 462, 468, 38 P.3d 1033 (2002).

[5] Clerk's Papers (CP) at 913.

"We review child support modifications and adjustments for abuse of discretion."[6] A trial court abuses its discretion when its exercise of discretion is based upon untenable grounds or reasons.[7] "A trial court's failure to include all sources of income not excluded by [the child support] statute is reversible error."[8]

RCW 26.19.071(1) and .071(3) provide that "[a]ll income . . . shall be disclosed and considered . . . from any source" in calculating child support, unless specifically excluded by .071(4). And income under .071(3)(d) includes "[d]eferred compensation." Consistent with the dictionary definition, "income" for purposes of the child support statute includes "(1) a gain or recurrent benefit that is usually measured in money or (2) the value of goods and services received."[9]

RSUs are "contractual promises made by an employer to deliver shares of stock to an employee at a future date" as a form of equity based compensation.[10] The stock itself is not transferred to the employee until the shares of stock become vested.[11] "Vesting may be either service based or performance based."[12]

---

[6] Ayyad, 110 Wn. App. at 467.

[7] State v. Hampton, 107 Wn.2d 403, 408-09, 728 P.2d 1049 (1986).

[8] In re Marriage of Bucklin, 70 Wn. App. 837, 840, 855 P.2d 1197 (1993).

[9] Matter of Marriage of Condie, 475 P.3d 993, 997 (Wash. Ct. App. 2020) (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 1143 (2002)).

[10] Brian C. Vertz, In the Money or Under Water? Capturing the Value of Incentive Compensation in Divorce, 41-FALL, FAM. ADVO. 39, 40 (2018).

[11] Id. at 40-41; JOSEPH W. BARTLETT, EQUITY FINANCE § 11.13 (2d ed. 2020); see MICHAEL J. HALLORAN ET AL., VENTURE CAPITAL & PUBLIC OFFERING NEGOTIATION ch. 15, § 7 (3d ed. Supp. 2020-2).

[12] HALLORAN ET AL., supra, ch. 15, § 7.

Before vesting is complete, RSUs have no tangible value.[13] RSUs are "taxed under the rules that apply to other non-qualified deferred compensation."[14] The "tax trigger is the date the shares are delivered to the employee, which is often the vesting date. The taxable income is the market value of those units at the vesting date."[15] And the delivered shares of stock are taxed as ordinary income.[16] Once the RSUs are delivered to the employee, they are taxable "regardless of whether the units are simultaneously liquidated."[17]

---

[13] Vertz, supra, at 41 (2018).

[14] Michael S. Knoll, The Section 83(B) Election for Restricted Stock: A Joint Tax Perspective, 59 SMU L. REV. 721, 738 (2006); see HALLORAN ET AL., supra, ch. 15, § 7 (For purposes of taxation "restricted stock units can be deemed to be deferred compensation.").

[15] Donna Pironti & Mitchell Benson, Performance Awards Through Employee Stock Compensation Plans: Tax and Divorce Issues, 41 FAM. ADVOC. Fall 2018, 17, 19; see BARTLETT, supra, § 11.13 ("gross income is recognized on the [RSU's] vesting date."). Because RSUs must be vested at the time of transfer, "[t]he intrinsic values" of the RSUs "[are] equal to [their] market price." Vertz, supra, at 41.

[16] Although the delivery date may not always be the same as the vesting date, "usually, when the RSU vests, the employee receives the transferable stock. . . . RSUs usually cannot be transferred until they are vested and received in stock." Pironti & Benson, supra, at 19. "A recipient does not become a shareholder with respect to the shares until the shares are issued (after satisfaction of the applicable vesting conditions). . . . The recipient will recognize ordinary income in an amount equal to the value of the shares (or cash received) upon the settlement." P. GARTH GARTRELL, JOSEPHINE GARTRELL & J. MARC FOSSE, EXECUTIVE COMPENSATION FOR EMERGING GROWTH COMPANIES § 53:2 tbl. (4th ed. 2020-21). "RSUs are taxed as ordinary income when received, if the vesting conditions are satisfied. RSUs are subject to section 409A of the Internal Revenue Code, and will be taxed as ordinary income, when the stock is received." Anat Alon-Beck, Unicorn Stock Options—Golden Goose or Trojan Horse?, 2019 COLUM. BUS. L. REV. 107, 170 n.287.

[17] Vertz, supra, at 40; see Pironti & Benson, supra, at 19.

RSUs are different from stock options.[18] When an employee is given a stock option, the employee has "the right to purchase stock at a particular price" (the strike price) that is "limited by a vesting schedule."[19] And "stock options become valuable when the market price exceeds the strike price."[20] In other words, stock options have "no value to the employee unless the stock appreciates in value."[21] When an employee exercises a stock option, the employee buys the stock at the strike price and can either hold the stock or cash it in.[22] The tax treatment of stock options varies depending on the type of stock option at issue.[23] For example, "[t]he granting and vesting of [non-qualified stock options] does not create a taxable event. The taxable event occurs upon exercise."[24] On the other hand, when incentive stock options "are ultimately sold, the gain is recognized for regular federal income tax purposes."[25]

In Ayyad, a mother requested an adjustment of a child support order based on the father's exercise of vested stock options he received from Microsoft as part

---

[18] For a variety of reasons, there has been a significant shift away from stock options to RSUs in equity-based compensation. See Knoll, supra, at 722.

[19] Vertz, supra, at 40-41.

[20] Id.

[21] Bartlett, supra, § 11.13.

[22] Vertz, supra, at 40.

[23] Pironti & Benson, supra, at 19-20; Vertz, supra, at 40-41.

[24] Pironti & Benson, supra, at 19; Ronald B. Schrotenboer, How the 1986 Tax Reform Act Changes the Tax Rules for High Technology Companies, 66 J. TAX'N 88, 94-95 (1991). The nuances of and policy rationale supporting any further distinctions between non-qualified stock options and incentive stock options and their tax treatment is beyond the briefing in this case.

[25] Pironti & Benson, supra, at 19; see also Schrotenboer, supra, at 94-95.

of his compensation.[26]  The father received vested stock options that were considered taxable income under federal income tax laws when exercised and cashed in.[27]  But the trial court excluded the vested, exercised and cashed in stock options from the father's income.[28]  We reversed because the father's vested stock options were treated as wages for federal income tax purposes when exercised and cashed in and were not specifically excluded from "income" as defined by the child support statute; therefore the vested, exercised and cashed-in stock options were "income" for purposes of calculating child support.[29]

Here, the RSUs in question were both vested and delivered.  And unlike the vested, exercised, and cashed-in stock options in Ayyad, the vested RSUs were taxable as ordinary income at delivery whether or not simultaneously cashed in.

In deciding whether vested and delivered RSUs are income for child support purposes, we start with the income worksheets completed by a parent based upon federal income tax records.  The Washington child support directive to consider all income from any source compares to the broad definition of "gross income" under the Internal Revenue Code of "all income from whatever source derived."[30]  And our child support statute expressly looks to federal income tax

---

[26] Ayyad, 110 Wn. App. at 465.

[27] Id. at 468.

[28] Id. at 469.

[29] Id. at 467.

[30] 26 U.S.C. § 61.

standards, tax returns, and pay stubs when verifying a parent's income.[31] Accordingly, as in Ayyad, we look to federal income tax standards for guidance when deciding whether RSUs qualify as "income" for child support purposes.[32]

Sotaniemi receives an annual salary from Microsoft of wages, a nonguaranteed bonus, and "stock award income" based upon RSUs.[33] Her September 2019 paystub confirms the total amount of her year-to-date income. And Sotaniemi's 2018 W-2 lists her combined wages, which includes her vested and delivered RSUs.

Sotaniemi's Fidelity investment account statements confirm her vested and delivered RSUs were treated as additions under her stock employee plan consistent with a "gain" to her as the employee. But Sotaniemi did not include her vested and delivered RSUs in her 2019 amended financial declaration. Because Sotaniemi's vested RSUs are a "gain" taxed as earnings under tax standards for deferred compensation when delivered, and they are not "specifically excluded" under RCW 26.19.071(4), the vested and delivered RSUs are income for purposes of the child support statute.

Sotaniemi suggests that RSUs do not generate cash that may be spent until the delivered shares are sold, and thus, unliquidated RSUs should not be counted

---

[31] "Verification of income. Tax returns for the preceding two years and current paystubs shall be provided to verify income and deductions." RCW 26.19.071(2).

[32] Ayyad, 110 Wn. App. at 467-69.

[33] Sotaniemi's paystubs refer to her RSUs as "stock award income." CP at 571.

as income for child support. But Sotaniemi's argument is not compelling. Vested RSUs are worth their market value when the shares of stock are delivered to the employee whether or not the RSUs are simultaneously liquidated. Sotaniemi contends that counting unliquidated RSUs as income is inconsistent with this court's holding in Ayyad. Specifically, she argues that the reason this court held that the stock options in Ayyad counted as income was because the father "'converted every exercised stock option to cash rather than leaving them in Microsoft stock.'"[34] But as discussed, Ayyad involved vested stock options which were not taxable income until they were exercised and cashed in.[35] Here, Sotaniemi's vested and delivered RSUs were worth their market value and were taxable as ordinary income when received. They did not need to be cashed in to be counted as income for tax or child support purposes.

Sotaniemi next contends that to avoid double counting, only liquidated RSUs should be considered as income and unliquidated RSUs must be counted merely as wealth for purposes of a deviation from the child support schedules. Sotaniemi relies upon this court's statement in Ayyad that "the [income] calculation does not result in double counting so long as . . . only exercised stock options converted to cash" are income and "other stock options [are placed] aside to be considered as wealth for deviation purposes."[36] Sotaniemi argues that her unliquidated but vested RSUs should qualify as the "other stock options" this court

---

[34] Resp't's Br. at 5 (quoting Ayyad, 110 Wn. App. at 469).

[35] Ayyad, 110 Wn. App. at 468.

[36] Id. at 469.

referred to in Ayyad.[37]  But her vested and delivered RSUs resulted in Sotaniemi's receipt of shares of stock worth their market value with no purchase price owing. Those shares of stock are not the equivalent of any type of "stock option." Because her vested and delivered RSUs are not a stock option at all, her double counting argument is inapposite.

Contrary to her suggestion that her vested and delivered RSUs count as income for child support purposes only if the shares of stock she received are actually liquidated, we conclude the trial court abused its discretion in omitting Sotaniemi's vested and delivered RSUs from the income calculation.  Consistent with the federal income tax standards, her vested and delivered RSUs count as income for child support purposes whether or not simultaneously liquidated.

## II.  Attorney fees

Sotaniemi seeks fees on appeal based on Ribnicky's intransigence. "Intransigence is a basis for awarding fees on appeal, separate from RCW 26.09.140 (financial need) or RAP 18.9 (frivolous appeals)."[38]  We can

---

[37] In a related argument, Sotaniemi contends that "[w]hen a party has RSUs that are not cashed in, the court should consider them as "wealth" to determine whether a deviation is appropriate."  Resp't's Br. at 6.  But in accordance with the child support statute, the court first considers the parents' income and "[t]hen, if requested, a court considers whether a deviation from the standard calculation is appropriate."  In re Marriage of Selley, 189 Wn. App. 957, 960, 359 P.3d 891 (2015) (citing RCW 26.19.075(1)).  Because Sotaniemi does not provide any compelling support for her contention that some "income sources" are automatically considered as wealth for purposes of deviation, her argument is not persuasive.

[38] In re Marriage of Mattson, 95 Wn. App. 592, 605, 976 P.2d 157 (1999).

"award one party attorney fees based on the other party's intransigence if the other party engages in foot-dragging and obstruction."[39]

In Ribnicky's first appeal, he argued that we should adjust the 2017 child support order and include Sotaniemi's vested RSUs as income.[40] We declined to address this issue because of "the limited record and briefing."[41] But the 2019 motion to adjust child support legitimately addressed Sotaniemi's current income, and Ribnicky has now provided an adequate record and briefing. He is not intransigent.

Therefore, we reverse and remand for further proceedings consistent with this opinion.

_____

WE CONCUR:

_____    _____
Andrus, A.C.J.                        Mann, C.J.

---

[39] In re Marriage of Pennamen, 135 Wn. App. 790, 807, 146 P.3d 466 (2006).

[40] E.J.S., slip op. at 22.

[41] Id. at 23.