[No. 17076-1-II.    Division Two.    September 8, 1994.]

*In the Matter of the Marriage of* JUDY Z. KNIGHT, *Appellant, and* JEFFREY KNIGHT, *Respondent.*

*Douglas J. Kaukl* and *Pendergrass & Kaukl,* for appellant.

*Douglass A. North* and *Maltman, Reed, North, Ahrens & Malnati, P.S.; Laurason T. Hunt; Tonya J. Gisselberg;* and *Mary L. Gaudio,* for respondent.

SEINFELD, A.C.J. — Judy Z. Knight appeals from a judgment in favor of her former husband, Jeffrey M. Knight. The trial court awarded Jeffrey Knight $792,000, an amount equal to one-half the value of the goodwill of Judy Knight's business, Ramtha Dialogues. It also awarded him attorney's fees. Jeffrey Knight cross-appeals. We reverse in part and affirm in part.

## FACTS

Judy and Jeffrey Knight married in 1984 and separated in the fall of 1988. At a meeting in December 1988, the parties reached a property disposition agreement. In April 1989, they signed a "Separation and Property Agreement" (Agreement) memorializing the December 1988 oral agreement. In turn, the June 1989 decree dissolving the marriage incorporated the Agreement.

The Agreement purported to list and distribute all of the community's property and property rights. On the list was "Ramtha Dialogues, including all copyrights, royalties, trademarks, patents or license agreements which may exist". Ramtha Dialogues was a business established to market items related to Ramtha, an invisible personage. Judy Knight described Ramtha as a 35,000-year-old warrior from the lost continent of Atlantis, with godlike qualities. Judy Knight claimed to communicate with the spirit of Ramtha and, in essence, to be his agent on earth, spreading his teachings through her public speaking and writing.

The Agreement awarded to Judy Knight as her separate property "[a]ll interest in and ownership of Ramtha Dialogues and the efforts under Ramtha, including all copyrights, royalties, trademarks, patents or license agreements which may exist or shall exist". The parties warranted that they had not concealed any material assets, but they also agreed that

In the event that it shall be subsequently determined that any material asset or property right, presently owned by the parties, has not been disclosed or disposed of herein, such asset or property right shall be vested in the parties as equal tenants in common.

The Agreement further provided that the Knights owned as separate property "[t]hose properties acquired by the parties . . . since the date of separation".

In March 1992, Jeffrey Knight moved, pursuant to CR 60(b), CR 60(e), and RCW 4.72.060, for a partial vacation of the dissolution decree. He alleged that Judy Knight, through her spiritual activities, had exerted undue influence over him to compel his participation in the Agreement. He also contended that she had deliberately concealed various items of personal property that she acquired after separation and that she had misrepresented facts related to another of the community's businesses, Messiah Arabian Stud, Inc.

Following a lengthy evidentiary hearing on the motion, the trial court entered detailed findings describing the information available to the parties about the value of their assets, along with a history of the parties' relationship and the circumstances of the making of the Agreement. The trial court concluded that Judy Knight did not exert undue influence over Jeffrey Knight, that she did not commit any form of fraud, and that there was no basis to provide Jeffrey Knight the relief he sought.

However, the trial court concluded, sua sponte, that the parties failed to dispose of an asset — the goodwill of Ramtha Dialogues. It found:

At the time the parties orally agreed to their Property Settlement Agreement, the Knights did not consider Ramtha Dialogues as having a value,[1] but Mr. Knight did believe that Mrs. Knight was capable of producing approximately $3,000,000.00 income per year. Neither of the parties regarded Ramtha Dialogues as having an intrinsic goodwill value. Neither of the parties are accountants and were not aware of the concept of

---

[1]The trial court found that in 1987 the Knights, faced with substantial IRS obligations, "conducted an extensive review of their assets and liabilities ultimately leading to preparation of a submission of materials to the IRS. This submission consisted of an outline of their assets and their respective valuations, and a listing of the extensive liabilities the parties had acquired. . . . As a part of the parties' submission to the IRS, they did not list Ramtha Dialogues as an asset having cash value. The parties' IRS submission showed that Mrs. Knight could expect to earn approximately $265,000.00 per month through the operation of Ramtha Dialogues."

goodwill. Neither of the parties attempted to conceal from the other a value attributable to the goodwill of Ramtha Dialogues.

. . . .

11. When the parties met in December, 1988 and essentially entered into an oral agreement to divide their assets and liabilities, although they were aware they owned the corporation and distributed the same, they did not consider nor were they aware of the asset of the goodwill of the Ramtha Dialogues business. Therefore, the Court finds that the parties did not distribute this asset either in the oral agreement, their separation agreement, or their Decree of Dissolution. . . .

The trial court, relying extensively on the valuation process used by Jeffrey Knight's expert appraiser, valued the goodwill at $1,584,000 as of the date of entry of the dissolution decree. It awarded the goodwill to Judy Knight, and awarded a judgment to Jeffrey Knight for half its value or $792,000. In addition, the trial court awarded Jeffrey Knight attorney's fees of $125,000 and costs of $24,160.05. The judgment required Judy Knight to make monthly payments, and set interest on the unpaid declining balance at the rate of 6 percent per annum.

In her appeal, Judy Knight asserts that the trial court erred by concluding that she and Jeffrey Knight had failed to distribute Ramtha Dialogues's goodwill and by awarding Jeffrey Knight one-half of the value of the goodwill. She also challenges the attorney's fees award.

In his cross appeal, Jeffrey Knight asserts that the trial court erred in its choice of the date of valuation for the goodwill of Ramtha Dialogues, in its use of a judgment interest rate below the statutory interest rate, and in its failure to partition several assets left undistributed by the dissolution decree. He also requests attorney's fees on appeal.

### GOODWILL OF RAMTHA DIALOGUES

Judy Knight contends that she and Jeffrey did not overlook Ramtha Dialogues's goodwill.[2] Rather, she argues, the parties each had extensive information about the business

---

[2] Nor did Jeffrey Knight plead or argue that the parties overlooked the asset of goodwill.

when they negotiated their Agreement, and they intended that the Agreement embrace all aspects of the business.

■ Professional goodwill is the expectation of continued public patronage. *In re Marriage of Hall,* 103 Wn.2d 236, 239, 692 P.2d 175 (1984).[3] It is an intangible asset of a business, and is subject to division in a marriage dissolution. Paul R. Berney & Stanley J. Garstka, *Accounting Concepts and Applications* 165 (1984); Carl L. Moore & Robert K. Jaedicke, *Managerial Accounting* 24-25 (1972); *Hall,* at 238-39. Nonetheless, *"[g]oodwill* is unidentifiable apart from a business and cannot be disposed of separately from the enterprise as a whole". Martin A. Miller, *Comprehensive GAAP[4] Guide* 21.05 (1991). *See also* Financial Accounting Standards Bd., *Accounting Standards* § 160.113 (1993).

■ The existence of goodwill is a question of fact. *In re Marriage of Kaplan,* 23 Wn. App. 503, 505, 597 P.2d 439 (1979). Here, two professional appraisers testified at trial regarding the value of Ramtha Dialogues and its goodwill. Substantial evidence supports the trial court's finding that Ramtha Dialogues had goodwill.

However, based on our review of the record, of all the trial court's findings, of the nature of goodwill, and of the language used by the Knights in the Agreement, we conclude that the evidence does not support the trial court's finding that the parties overlooked the asset of goodwill. To place this in context, we note that the trial court found that Jeffrey Knight "was fully aware of the parties' financial status, including assets and liabilities, and with that knowledge entered into negotiations with Mrs. Knight for a property settlement". The trial court found that Jeffrey Knight also considered the impact of personal factors in negotiating the property settlement.

These factors are the same factors that the trial court identified as affecting the value of the goodwill: *e.g.,* "the unique nature of the business, adverse publicity, Mr.

---

[3]Goodwill is also defined, in the enterprise acquisition context, as the excess of the cost of a business over the sum of identifiable net assets. Financial Accounting Standards Bd., *Accounting Standards* § 160.101 (1993).

[4]GAAP — Generally Accepted Accounting Principles.

Knight's known HIV status, the parties' belief that Mrs. Knight had a potential to contract HIV, [and] Mrs. Knight's unique relationship as channeler for Ramtha".

. In addition, the trial court found that Jeffrey Knight was capable of making his own informed decisions, and made those decisions based on a considered evaluation of the available information. It found that Jeffrey Knight was aware of the projected income of Ramtha Dialogues. It further found that Jeffrey Knight "expressed to his wife [a] belief that her channeling activities were fraudulent". Finally, the trial court found that Jeffrey Knight, with full knowledge of the financial details and personal details necessary to value the business of Ramtha Dialogues, believed that Ramtha Dialogues did not have a value.

The above findings of the trial court are inconsistent with its additional finding that the parties overlooked the goodwill component of the business. Rather, they show that the parties intended to distribute the entire business to Judy Knight.

The language of the Agreement itself is also inconsistent with the trial court's finding that the parties failed to dispose of the entire business. The Agreement stated:

Wife shall receive . . . as her sole and separate property . . .:

. . . .

(b) All interest in and ownership of Ramtha Dialogues and the efforts under Ramtha, including all copyrights, royalties, trademarks, patents or license agreements which may exist or shall exist[.]

This comprehensive language does not simply award Ramtha Dialogues to Judy Knight. It also awards all interest in and ownership of "the efforts under Ramtha" to her. "Effort", as used in this context, means "the product or result of expenditure of energy". *Webster's Third New International Dictionary* 725 (1969). This term would seem to encompass goodwill.

The Agreement's use of the word "including" before the list of the component parts of Ramtha Dialogues further supports this interpretation. "Including" suggests that the parties intended the list to be illustrative, rather than a complete and exclusive catalog.

In finding that the parties did not distribute the goodwill, the trial court relied on the fact that the parties were unfamiliar with this business accounting term. The court particularly noted that neither party was an accountant nor aware of the concept of goodwill. It concluded that since the parties were unaware of the concept of goodwill, they could not have distributed the asset of goodwill.

█ Although the parties apparently were unfamiliar with the accounting term "goodwill", they possessed and considered the information necessary to value all the component parts of the business. *See In re Marriage of Fleege*, 91 Wn.2d 324, 326, 588 P.2d 1136 (1979) (in valuing goodwill, the court considers the practitioner's age, health, past demonstrated earning power, and professional reputation in the community). The record here shows that the parties did consider these factors in reaching their agreement.

In considering these factors, the parties were aware of Ramtha Dialogues's past and prospective earnings; the relationship between publicity about Ramtha and its revenues; and the potential negative impact on the business of Ramtha developing an adverse public image. In particular, the couple was concerned about possible damage to the business should it turn out that Judy Knight had contracted AIDS (acquired immune deficiency syndrome) from Jeffrey, who was ill with the condition.

Having considered these factors, the Knights determined that Ramtha Dialogues had no value of consequence. They were incorrect; in subsequent years the business enjoyed financial success. However, their miscalculation is not a basis to revisit the Agreement.

Since the evidence was insufficient to find that the parties did not agree to distribute the entire business, the trial court erred in awarding Jeffrey Knight a judgment for his portion of the business goodwill.

### Award of Attorneys Fees and Costs to Jeffrey

Judy Knight argues that the proper form for Jeffrey's challenge to the dissolution decree was a declaratory judgment action, and, therefore, the trial court lacked authority

to grant fees under RCW 26.09, the Parenting Act of 1987. She also contends that the court had no other statutory, contractual, or equitable basis for the award. We conclude that the trial court acted with proper authority and affirm its award of attorney's fees to Jeffrey Knight.

RCW 26.09.140 grants trial courts the discretion to order one party to pay the other party's attorney's fees and costs in domestic relations actions. Jeffrey Knight brought his CR 60 motion in an effort to modify the dissolution decree by vacating several of its sections. His challenge to the decree constituted a continuation of the original dissolution action brought under RCW 26.09. *In re Marriage of Parks*, 48 Wn. App. 166, 172, 737 P.2d 1316, *review denied*, 109 Wn.2d 1006 (1987). *See also Lindgren v. Lindgren*, 58 Wn. App. 588, 591-92, 794 P.2d 526 (1990), *review denied*, 116 Wn.2d 1009 (1991). Thus the trial court acted within its authority in awarding attorney's fees.

Judy Knight further argues that the trial court's findings are inadequate to support the attorney's fees award and permit meaningful appellate review. She contends that the trial court did not properly indicate how it determined the award. We disagree. The trial court provided sufficient written and oral explanations for its calculations and the record supports its determination.

Well-established rules guide the award and review of attorney's fees under RCW 26.09.140. The decision to award fees is within the trial court's discretion. *In re Custody of Salerno*, 66 Wn. App. 923, 925-26, 833 P.2d 470 (1992). The party challenging the award bears the burden of proving that the trial court exercised this discretion in a way that was clearly untenable or manifestly unreasonable. *Abel v. Abel*, 47 Wn.2d 816, 819, 289 P.2d 724 (1955). The trial court must indicate on the record the method it used to calculate the award. *In re Marriage of Sanborn*, 55 Wn. App. 124, 130, 777 P.2d 4 (1989).

Further, the trial court must balance the needs of the spouse seeking the fees against the ability of the other spouse to pay. *In re Marriage of Nelson*, 62 Wn. App. 515,

521, 814 P.2d 1208 (1991). In calculating a fee award a court should consider: (1) the factual and legal questions involved; (2) the time necessary for preparation and presentation of the case; and (3) the amount and character of the property involved. *Abel*, 47 Wn.2d at 819.

The trial court awarded Jeffrey approximately $149,000 in attorney's fees and costs, roughly one-half the expenses it found he had incurred. Findings of fact 20 through 22 indicate that, overall, the trial court found the fees charged and the time expended reasonable. The record contains declarations and detailed billing statements that support these findings. The trial court also considered the large and undisputed disparity in the parties' economic circumstances and "the complexity of some of the issues, . . . the general necessity to meet the vigorous defense of the non-moving party [Judy], and the general equities of the case". It also noted that Jeffrey Knight failed to prevail on the majority of the issues and that "[n]ot all of" the attorneys' work "appear[ed] to be totally necessary".

In its ruling on a motion for reconsideration, the trial court further explained that Judy Knight had unreasonably resisted Jeffrey Knight's exploration of several issues, thereby putting the parties to considerable expense. We are satisfied that the trial court considered the appropriate factors, carefully calculated the award, and adequately indicated on the record its method of determining the award. Judy Knight has failed to show an abuse of discretion.

### DATE OF VALUATION OF RAMTHA DIALOGUES'S GOODWILL

As part of his cross appeal, Jeffrey Knight asserts that the trial court erred in its choice of the date for the valuation of the goodwill of Ramtha Dialogues. He contends that the court should have valued the goodwill as of September 1992, the date of the hearing on his motion to vacate. As we decided above, the dissolution decree awarded Judy Knight the goodwill. Thus, this issue is moot and we decline to consider it.

## INTEREST RATE ON THE DEFERRED PAYMENTS
## ON THE JUDGMENT

For the same reason, we need not consider Jeffrey Knight's argument that the trial court erred by fixing the interest rate on the judgment for goodwill at 6 percent per annum rather than at the statutory interest rate. With respect to the interest on the attorney's fees award, however, we conclude that the trial court erred in setting the award at less than the statutory rate.

RCW 4.56.110 provides:

> Interest on judgments shall accrue as follows:
>
> . . . .
>
> (3) Except as provided under subsections (1) and (2) of this section, judgments shall bear interest from the date of entry at the maximum rate permitted under RCW 19.52.020 on the date of entry thereof[.]

At the time of judgment, the maximum rate permitted under RCW 19.52.020 was 12 percent per annum. RCW 19.52.020(1). "[I]t is the responsibility of the court to enter a judgment which complies with the statute [RCW 4.56.110]." *Safeco Ins. Co. of Am. v. JMG Restaurants, Inc.*, 37 Wn. App. 1, 23, 680 P.2d 409 (1984). Failure to do so constitutes error meriting remand for correction of the judgment's interest rate to the statutory rate. *JMG Restaurants*, at 23-24.

Although in the context of dissolution actions trial courts have discretion to reduce the rate of interest on deferred payments, *In re Marriage of Stenshoel*, 72 Wn. App. 800, 811, 866 P.2d 635 (1993) (citing *Berol v. Berol*, 37 Wn.2d 380, 382-83, 223 P.2d 1055 (1950)), a trial court abuses this discretion if it provides for an interest rate below the statutory rate without setting forth adequate reasons for doing so. *Stenshoel*, at 812 (citing *Berol*, at 383). The trial court failed to provide reasons for selecting a rate less than the statutory rate. Thus, we must remand for correction of the decree to reflect the statutory rate of interest.

## PARTITION OF ADDITIONAL ASSETS

Jeffrey Knight asserts that the trial court erred by failing to partition three assets not explicitly distributed in the Agree-

ment or dissolution decree: (1) $77,536 in gold and (2) a $30,000 interest in a business called Lee's Outfitters, both acquired with income from Messiah Arabian Stud, a corporation awarded to Judy in the Agreement; and (3) $2,097,930 in promissory notes payable to Judy by Messiah Arabian Stud. Jeffrey Knight contends that Judy Knight acquired these assets during their separation without properly disclosing their existence to him.

Jeffrey Knight's claims are inconsistent with findings of fact 16 and 17 which provide that any assets acquired by Judy Knight following separation were acquired with funds that Jeffrey knew Judy had earned; that neither party concealed from the other any assets or the value of any assets; and that at all times after commencement of the dissolution proceedings both parties had coequal information regarding their assets and liabilities. Jeffrey Knight fails to assign error to the trial court's findings. Thus, we treat the findings as verities on appeal. *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 407, 858 P.2d 494 (1993).

In addition, we observe that the record contains evidence sufficient to support these findings. This assignment of error lacks merit.

### ATTORNEYS FEES ON APPEAL

Jeffrey Knight seeks attorney's fees on appeal pursuant to RCW 26.09.140. "Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorney's fees in addition to statutory costs." RCW 26.09.140. Based upon our consideration of the issues on appeal and our review of the record below, we decline to award attorney's fees to Jeffrey Knight.

We reverse in part and remand for further proceedings consistent with this opinion.

ALEXANDER and HOUGHTONS, JJ., concur.

Review denied at 126 Wn.2d 1011 (1995).