IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | No. 30965-7-III |
| | ) | |
| PETER ALLEN JOHNSON, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| ROBIN EARLENE JOHNSON, | ) | |
| | ) | |
| Appellant. | ) | |

SPERLINE, J.* — Robin Johnson challenges a commissioner's ruling that declined to find Peter Johnson in contempt for failing to pay maintenance. The commissioner determined that Mr. Johnson's payment of Ms. Johnson's liabilities assigned to her in the separation decree fulfilled his maintenance obligations for the contested period. Ms. Johnson also assigns error to a superior court's decision to strike her motion to revise after she failed to comply with a local court rule that required her to notify the court of the ready status of the motion. We affirm the trial court's decision to strike Ms.

_____

* Judge Evan E. Sperline is serving as judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

Johnson's motion to revise. We also affirm the commissioner's ruling denying Ms. Johnson's motion for contempt. However, we remand for the trial court to address whether Ms. Johnson is entitled to attorney fees.

## FACTS

Mr. Johnson and Ms. Johnson, each acting pro se, dissolved their 30-year marriage. The parties filed a petition of legal separation and related findings. Later, the parties filed a decree of separation and attached the petition and related findings. However, the agreed-upon provisions in the decree of separation differed from the findings. In the findings, Mr. Johnson was obligated to pay spousal maintenance for seven years. However, the decree of separation did not define the length of the maintenance obligation. The decree of legal separation was eventually converted into a decree of dissolution.

Mr. Johnson's monthly maintenance obligation was to begin June 1, 2003. Between June 2003 and March 2005, Mr. Johnson did not pay maintenance directly to Ms. Johnson. However, he paid her separate liabilities, including her one-half of the mortgage payment, her car payment, and her car insurance. Ms. Johnson did not object. After the couple's home sold in March 2005, Mr. Johnson stopped paying Ms. Johnson's liabilities and began paying $1,200 for maintenance directly to her.

In May 2011, Mr. Johnson informed Ms. Johnson that he was making his last maintenance payment. Ms. Johnson filed a motion for contempt against Mr. Johnson, contending that he was obligated to pay maintenance for life as set forth in the dissolution decree. A court commissioner denied Ms. Johnson's motion, holding that Mr. Johnson's maintenance obligation was for seven years.

Ms. Johnson filed a motion for revision. The trial court's ruling on revision mirrored the commissioner's decision. However, the court noted that it was not deciding whether the seven years of maintenance had ended or whether Mr. Johnson satisfied his maintenance obligations in the first few years of separation and dissolution. The court determined that those issues needed to be presented in a separate motion.

On January 26, 2012, Ms. Johnson filed a second contempt motion, contending that Mr. Johnson owed unpaid maintenance and other financial obligations. Ms. Johnson maintained that Mr. Johnson did not make his $1,200 monthly maintenance payments between June 2003 and March 2005. She also maintained that Mr. Johnson failed to make $260 monthly payments on a VISA card account as negotiated in the decree, and that this payment was required indefinitely even though she continued to place charges on the card after dissolution. With accumulated interest, she sought a judgment of $58,573.40 and attorney fees in the amount of $4,000.

A court commissioner denied Ms. Johnson's second motion for contempt on February 28. The commissioner determined that Mr. Johnson satisfied his maintenance obligations from June 2003 until the house sold in 2005. The commissioner found that the parties mutually agreed that benefits Mr. Johnson transferred to Ms. Johnson constituted in-kind payments, satisfying his maintenance obligation. These benefits included Mr. Johnson's payment of Ms. Johnson's one-half of the mortgage and her independent use of the family home, totaling a value of $1,000. In addition, Mr. Johnson paid the utilities on the home, Ms. Johnson's health insurance, and car payment. The commissioner found that the value of these benefits exceeded the $1,200 maintenance payment.

As for the VISA payment, the commissioner found that Mr. Johnson was required to make payments of $260 per month. However, the commissioner rejected Ms. Johnson's contention that Mr. Johnson was required to make those payments indefinitely. Instead, the commissioner determined that Mr. Johnson's obligation was to pay off the account balance at the time of separation. The commissioner recognized that the parties neglected to include the account balance in the decree, likely because they were unrepresented at the time it was created. The commissioner determined that without any evidence of the balance at the time of separation, he could not make a judgment as to whether Mr. Johnson met his VISA obligation.

4

On March 9, Ms. Johnson filed a motion to revise the commissioner's ruling on the second contempt motion. A hearing on the revision motion was initially scheduled for March 29. Spokane County Local Administrative Court Rule (LAR) 0.7(d) required the motion hearing to be confirmed by noon, two days before the hearing, by notifying the judicial assistant to the assigned judge.

The revision hearing was continued to April 12 and then again to April 19. Ms. Johnson's attorney did not comply with LAR 0.7 for the April 19 hearing. At approximately 2:00 p.m. on April 17, counsel realized her mistake and contacted the court to note the hearing as ready. She acknowledged the delay and explained that her failure to call in was a result of a calendaring error at her office. After being notified that the trial court struck the motion, she requested an order continuing the revision hearing.

On April 19, the court heard the motion to continue. The trial court denied the motion to continue the hearing because the motion had been stricken. The court explained that striking the motion to revise was mandatory when a party fails to comply with the call-in procedures in LAR 0.7(d). And, because of the statutory time frame for filing a revision motion, the motion to revise could not be refiled.

Ms. Johnson filed a motion for reconsideration. The trial court reaffirmed its decision, stating (1) the local rule was clear and unambiguous that failure to call the court to confirm readiness of a motion for revision requires the court to strike the motion, and

5

(2) Ms. Johnson failed to follow the local rule that requires the moving party to discuss a requested continuance with the other party before calling in the status of the motion. As for the compelling reason justifying LAR 0.7, the court explained that it could not manage the high volume of motions for revision without a confirmation procedure that gives the court notice to review the file as it existed at the time of the commissioner's decision.

Ms. Johnson appeals. She contends that the trial court erred in striking her revision motion for failure to follow LAR 0.7(d) because the local rule conflicts with the statutory right to revision. She also contends that the commissioner erred by failing to find Mr. Johnson in contempt.

## ANALYSIS

*LAR 0.7.* When the interpretation and application of a court rule is challenged, we apply de novo review. *Spokane County v. Specialty Auto & Truck Painting, Inc.*, 119 Wn. App. 391, 396, 79 P.3d 448 (2003).

A trial court's order dismissing an action for lack of compliance with court rules is reviewed for an abuse of discretion. *Woodhead v. Discount Waterbeds, Inc.*, 78 Wn. App. 125, 130-31, 896 P.2d 66 (1995). "A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds." *Id.* at 131.

Ms. Johnson challenges the trial court's decision to strike her revision motion pursuant to LAR 0.7(d). She contends that LAR 0.7(d) restricts the statutory right to revision of a commissioner's ruling in RCW 2.24.050. She maintains that once a motion to revise is timely filed, the local court rule cannot take away that right by imposing an additional timing requirement.

RCW 2.24.050 provides the right to revision of a commissioner's decision by the superior court. A motion for revision must be filed within 10 days from the entry of the order or judgment of the court commissioner. RCW 2.24.050. The right to seek revision of a commissioner's decision is rooted in article IV, section 23 of the Washington Constitution. *State v. Smith*, 117 Wn.2d 263, 268, 814 P.2d 652 (1991). The loss of the right to revise is presumptively prejudicial. *State v. Wicker*, 105 Wn. App. 428, 432, 20 P.3d 1007 (2001).

Spokane County enacted LAR 0.7 to govern revision of a court commissioner's order. In addition to incorporating the 10-day rule in RCW 2.24.050, LAR 0.7 sets the procedure for hearing a revision motion. LAR 0.7(d) dictates that the moving party contact the presiding judge's assistant by noon, two days before the hearing date, as to the ready status of the motion. Failure to comply with this rule results in the motion being stricken. LAR 0.7(d).

7

"Superior courts have the procedural authority to adopt rules to carry out a statutory directive where a mode of proceeding is not specifically pointed out and jurisdiction is otherwise conferred upon the court." *Mabe v. White*, 105 Wn. App. 827, 829, 15 P.3d 681 (2001) (citing RCW 2.28.150). However, when a statute grants a valuable right to a litigant, the exercise of that right cannot be restricted by a local rule that imposes a time requirement different from the statute. *Harbor Enter., Inc. v. Gunnar Gudjonsson*, 116 Wn.2d 283, 293, 803 P.2d 798 (1991).

Here, the statute and the local court rule are not in conflict. LAR 0.7(d) does not restrict a litigant's right to revision by adding an additional time requirement to RCW 2.24.050. Instead, LAR 0.7(d) is a procedural court rule to manage timely motions for revision. It does not change the court's jurisdiction to hear the matter. A party gains the right by filing a revision motion within 10 days from the entry of the order or judgment of the court commissioner. RCW 2.24.050. Filing a timely motion confers jurisdiction on the superior court to hear the motion. Once jurisdiction is established, LAR 0.7(d) sets the procedure for hearing the motion. It does not remove jurisdiction or act as a jurisdictional bar.

A procedural requirement of the sort incorporated in LAR 0.7(d) is particularly important to efficient use of public resources in light of the fact that RCW 2.24.050 contains no limitation on when a revision motion must be argued, assuming it is filed

within the 10-day limitation of the statute. The elected judge to whom a revision motion is presented must duplicate the file review previously undertaken by the commissioner. Without a confirmation requirement, that investment of time may be wasted. The judge or a colleague may have to repeat the process yet again if the hearing is continued.

Here, Ms. Johnson timely filed her motion for revision in accordance with RCW 2.24.050. At that point, the court obtained jurisdiction to hear her revision motion. Ms. Johnson's revision hearing was subject to the procedural requirements of LAR 0.7(d). When Ms. Johnson failed to call in the motion as ready, the trial court struck the motion as required by the court rule. The trial court explained that it could not manage the high volume of requests for revision without a call-in procedure that gives the court notice to review the file materials presented to the commissioner.

The court did not abuse its discretion by following this mandatory rule. "A trial court . . . has the discretionary authority to manage its own affairs so as to achieve the orderly and expeditious disposition of cases." *Woodhead*, 78 Wn. App. at 129. The local court rule does not affect a party's right to move for revision.

Ms. Johnson mistakenly relies on *In re Marriage of Lemon*, 118 Wn.2d 422, 823 P.2d 1100 (1992) in support of her position. In *Lemon*, the Supreme Court invalidated a local court rule that imposed a more restrictive time frame for filing an affidavit of prejudice than required by RCW 4.12.050. *Lemon*, 118 Wn.2d at 423. The court found

9

that the right to a change of judge accrues when the applicant meets the statutory criteria, and that the local court could not restrict that right by imposing a time requirement different from the statute. *Id.* at 423-24. The court rule in *Lemon* is distinguishable from the rule challenged by Ms. Johnson. LAR 0.7(d) does not change the statutory criteria for exercising a right to revision in RCW 2.24.050. It is a procedural rule to manage the court's docket once the right to revision has been invoked.

LAR 0.7 does not restrict a litigant's constitutional and statutory right to revision. The court did not abuse its discretion by striking the motion in accordance with LAR 0.7. Once Ms. Johnson's motion to revise was stricken, the commissioner's decision became the decision of the superior court. RCW 2.24.050.

*Contempt of Court.* A superior court's decision in a contempt proceeding is reviewed for an abuse of discretion. *In re Marriage of Myers*, 123 Wn. App. 889, 892, 99 P.3d 398 (2004). A superior court abuses its discretion if its decision is based on untenable grounds or untenable reasons. *Id.* at 892-93. Superior court decisions in dissolution proceedings will seldom be changed on appeal. *In re Marriage of Griffin*, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). The reviewing court must defer to the sound discretion of the trial court unless the superior court exercised that discretion "in an untenable or manifestly unreasonable way." *In re Marriage of Wayt*, 63 Wn. App. 510, 513, 820 P.2d 519 (1991).

10

Findings of fact supported by substantial evidence, i.e., evidence sufficient to persuade a rational person of the truth of the premise, will not be disturbed on appeal. *In re Marriage of Stern*, 57 Wn. App. 707, 717, 789 P.2d 807 (1990) (quoting *Bering v. Share*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986)). "This court will not substitute its own judgment for that of the trial court where the record shows that the trial court considered all relevant factors and the award is not unreasonable under the circumstances." *Id.*

Here, we review the decision of the commissioner as the decision of the superior court. RCW 2.24.050. Ms. Johnson assigns error to the trial court's conclusion that Mr. Johnson satisfied his maintenance payments from October 2003 to March 2005 through in-kind payments. She contends that the trial court erred in finding that the parties mutually agreed to the in-kind maintenance payments and that the in-kind payments were equivalent to the $1,200 monthly maintenance payment owed by Mr. Johnson. Also, Ms. Johnson maintains that the trial court's decision was an impermissible modification of the separation decree.

Contempt proceedings may be initiated as part of a dissolution action when the party obligated to pay maintenance fails to comply. RCW 26.18.050(1). A court may issue an order requiring the obligor to appear and show cause as to why the relief requested under a petition or motion for contempt should not be granted. RCW 26.18.050(1).

11

In contempt proceedings, reviewing courts apply a strict construction rule to judicial decrees that are the basis for the contempt motion. *Graves v. Duerden*, 51 Wn. App. 642, 647, 754 P.2d 1027 (1988). In such proceedings, an order will not be expanded beyond the plain meaning of its terms read in light of the issues and purposes of the order; the facts found must constitute a plain violation of the order. *Johnston v. Beneficial Mgmt. Corp. of Am.*, 96 Wn.2d 708, 712-13, 638 P.2d 1201 (1982). The purpose of this rule is to protect persons from contempt proceedings based on violations of judicial decrees that are unclear or ambiguous, or that fail to explain precisely what must be done. *Graves*, 51 Wn. App. at 647-48.

When contempt proceedings are brought upon claims for past due spousal maintenance, equitable principles have been applied to mitigate the harshness of contempt remedies when application of the principle does not cause an injustice to the former spouse. *In re Marriage of Sanborn*, 55 Wn. App. 124, 127, 777 P.2d 4 (1989). Equitable estoppel rests on the principle that when a person, by acts or representations, causes another to change position or to refrain from performing a necessary act to his or her detriment or prejudice, the person who performs such acts or makes such representations is precluded from asserting the conduct or forbearance of the other party to his or her advantage. *Hartman v. Smith*, 100 Wn.2d 766, 769, 674 P.2d 176 (1984) (quoting *Dickson v. U.S. Fid. & Guar. Co.*, 77 Wn.2d 785, 788, 466 P.2d 515 (1970)).

12

Equitable estoppel requires a defendant to prove that: "(1) the plaintiff asserted a statement or acted inconsistently with a claim afterward asserted; (2) the defendant acted on the faith of that statement or act; and (3) the defendant would be injured if the plaintiff were allowed to contradict or repudiate the statement or act." *In re Marriage of Capetillo*, 85 Wn. App. 311, 320, 932 P.2d 691 (1997). "'Equitable estoppel is not favored, and the party who asserts it must prove every element with clear, cogent, and convincing evidence.'" *Id.* (quoting *Sanborn*, 55 Wn. App. at 129).

Here, the plain language of the decree required Mr. Johnson to pay $1,200 per month beginning in June 2003. Mr. Johnson admits that he did not make payments directly to Ms. Johnson between June 2003 and March 2005. However, the commissioner did not abuse his discretion by denying to hold Mr. Johnson in contempt of court. The doctrine of equitable estoppel applies.

While the commissioner did not expressly apply the doctrine, it is clear that his decision relied on the equitable principle. The commissioner found that the parties entered into a mutual agreement regarding Mr. Johnson's maintenance payments from June 2003 to March 2005. Mr. Johnson acted on the mutual agreement and supported Ms. Johnson by paying her obligations. The commissioner noted that the purpose of maintenance was for payment of Ms. Johnson's housing, insurance, and car payment. These were the same obligations that Mr. Johnson paid during the contested period.

13

Also, the commissioner found that Ms. Johnson would receive a double payment if Mr. Johnson were required to pay back maintenance payments after providing her with benefits to her in excess of $1,200, and that this result would be absurd. The court found that Ms. Johnson never complained about Mr. Johnson's performance during this period, and that the mutual agreement resulted in terms more favorable to Ms. Johnson.

The commissioner did not abuse his discretion by denying to hold Mr. Johnson in contempt of court. The commissioner's decision is supported by the evidence. The declaration of Mr. Johnson stated that after the parties entered the decree of separation, they agreed that Mr. Johnson would pay the monthly mortgage installments pending the sale and that this would represent $653 of the $1,200 maintenance payment. He also stated that he paid all of the utilities associated with the home, Ms. Johnson's medical insurance, and Ms. Johnson's automobile insurance. These payments continued until the house was sold in March 2005. At that point, Mr. Johnson contends that he began paying the $1,200 directly to Ms. Johnson. Ms. Johnson does not dispute that these payments were made by Mr. Johnson. This evidence supports the commissioner's decision that the parties agreed that Mr. Johnson would pay Ms. Johnson's obligations, and that this in-kind payment satisfied his maintenance obligation.

The evidence also supports the trial court's finding that the value of the in-kind payments was in excess of the required maintenance payment. It is undisputed Mr.

14

Johnson paid $1,008.75 per month to cover Ms. Johnson's house note, car insurance, and car payment. Also, evidence shows that Mr. Johnson paid approximately $170 for Ms. Johnson's telephone and utilities and, beginning in April 2004, approximately $300 for her medical insurance. At some point before the house sold, he also made an additional telephone payment in the amount of $1,000. While Mr. Johnson was a few dollars short of the $1,200 monthly payment from June 2003 to March 2005, he more than compensated for the shortfall when he began paying Ms. Johnson's medical insurance and by making the extra utility payment. The court found that the parties had a mutual understanding that the payments were a substitute for direct payment of spousal support and that Mr. Johnson's maintenance obligation was more than satisfied from June 2003 until March 2005.

The court did not modify the decree in reaching its decision. The commissioner did not adjust the amount of past due maintenance. Mr. Johnson made the $1,200 maintenance payment to Ms. Johnson by means of payment of her obligations. The parties agreed to the payment scheme. Mr. Johnson, in carrying out this agreement, did not constitute a "plain violation" of the decree upon which a finding of contempt could be based.

As for the dispute over the VISA payments, Ms. Johnson contests the commissioner's conclusion that the decree required Mr. Johnson to pay off the balance of

the VISA. We conclude that the commissioner's decision not to hold Mr. Johnson in contempt for the VISA payments was proper, albeit for a different reason.

Contempt was not warranted because the divorce decree is ambiguous in relation to the VISA obligation. The decree is unclear as to whether the parties share the responsibility of one VISA account or whether there were two separate accounts and two separate obligations. Mr. Johnson's separate liabilities include a "VISA" with a $260 payment, while Ms. Johnson's separate liabilities include "Horizon VISA Credit Union" with a $30 payment. Additionally, the amount owed on the VISA account or accounts is not listed as a community or separate liability. The underlying debts on the accounts are not allocated to either party in the decree. Mr. Johnson cannot be held in contempt of this ambiguous decree, as his obligations under the decree are unclear.

The commissioner did not need to interpret the decree in the contempt proceeding to determine the parties' obligations. In the contempt proceeding, the commissioner's review was limited to the plain language of the divorce decree. Neither party filed a motion to clarify the decree.

While contempt of court is a remedy available to enforce court-ordered obligations, it is not the exclusive remedy. Ms. Johnson could have moved the court for entry of a judgment based on the allegedly unsatisfied obligations of Mr. Johnson under the decree. In doing so, she would have the burden of proving, by a preponderance of the

16

evidence, the existence and outstanding balance of the obligation. The trial court would be justified in interpreting the language of the decree in resolving these issues. The party moving for judgment on the decree would not be burdened with the strict construction principles applicable to contempt. Concomitantly, Ms. Johnson would not be entitled to invoke the remedial contempt sanctions provided by statute, including costs and fees awarded without regard to her need and ability to pay, and incarceration. RCW 7.21.030.

In sum, the commissioner did not abuse his discretion when he determined that Mr. Johnson was not in contempt of court. The commissioner's finding that Mr. Johnson did not commit a plain violation of the maintenance order is supported by the evidence. The decree is ambiguous in regard to the VISA payments and incapable of enforcement by contempt.

*Attorney Fees on Appeal.* A court's award of attorney fees is reviewed for an abuse of discretion. *Mahler v. Szucs*, 135 Wn.2d 398, 435, 957 P.2d 632 (1998).

Ms. Johnson challenges the commissioner's denial of her request for attorney fees. She contends that the commissioner failed to consider the parties' resources and ability to pay. She also requests attorney fees on appeal under RAP 18.1, RCW 26.18.160, and RCW 26.09.140.

RCW 26.18.160 provides for an award of attorney fees and costs to the prevailing party in a contempt action for enforcement of maintenance. Ms. Johnson is not entitled

17

to attorney fees under RCW 26.18.160 at the trial court or on appeal. She is not the prevailing party in her contempt action.

RCW 26.09.140 allows the court to order one party to a marriage dissolution action to pay attorney fees and costs to the other party for enforcement or modification proceedings after entry of judgment, based on the financial resources of both parties. The trial court may award attorney fees in accordance with need and the other side's ability to pay. RCW 26.09.140. "The trial court must indicate on the record the method it used to calculate the award." *In re Marriage of Knight*, 75 Wn. App. 721, 729, 880 P.2d 71 (1994). A lack of findings regarding need of ability to pay requires reversal. *In re Marriage of Scanlon*, 109 Wn. App. 167, 181, 34 P.3d 877 (2001). Nothing in the statute conditions this award on whether a party prevails in an action or not. *In re Marriage of Rideout*, 150 Wn.2d 337, 357, 77 P.3d 1174 (2003).

On appeal, RCW 26.09.140 grants the appellate court discretion to award attorney fees after considering the parties' relative ability to pay and the merit of the issues on appeal. *In re Marriage of Muhammad*, 153 Wn.2d 795, 807, 108 P.3d 779 (2005).

The commissioner abused his discretion when he failed to consider Ms. Johnson's request for attorney fees under RCW 26.09.140. This attorney fee provision does not require Ms. Johnson to prevail in the contempt proceeding in order to recover attorney fees. She sought to enforce the dissolution decree. At a minimum, the trial court was

18

required to consider the financial resources of both parties before denying attorney fees. There are no findings in the record to indicate that the trial court undertook this review. We remand the issue of attorney fees to the trial court.

However, we decline to award Ms. Johnson attorney fees in this appeal. The merits of Ms. Johnson's contempt arguments are not sound. Additionally, while she demonstrated financial need, she did not produce documents showing that Mr. Johnson has the ability to pay.

We affirm the commissioner's ruling denying Ms. Johnson's motion for contempt. However, we remand to the trial court to determine if Ms. Johnson is entitled to attorney fees. Her request for attorney fees incurred on appeal is denied.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Sperline, J.P.T.

WE CONCUR:

_____
Brown, A.C.J.

_____
Korsmo, J.

19