IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 80282-8-I |
| | ) | |
| STEPHEN A. BURNS, | ) | DIVISION ONE |
| | ) | |
| Appellant, | ) | UNPUBLISHED OPINION |
| | ) | |
| v. | ) | |
| | ) | |
| HIROMI F. FUJIKI, formally known as | ) | |
| HIROMI F. BURNS, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

HAZELRIGG, J. — Stephen Burns seeks reversal of an order modifying child support. He contends that the court was not permitted to modify the previously ordered downward deviation based on the children's residential schedule because the amount of time that the children spent with each parent had not changed. He also argues that the court failed to consider relevant factors when determining the amount of the modified downward deviation and that the court erred in awarding attorney fees and costs to the other parent, Hiromi Fujiki (formerly Hiromi Burns). Because the court was permitted to modify the downward deviation and did not abuse its discretion in doing so, we affirm. However, because the court did not enter sufficient findings regarding the award of attorney fees and costs, we vacate the award and remand for reconsideration of this issue.

FACTS

Stephen Burns and Hiromi Fujiki divorced on February 25, 2015. The court reviewed and approved the agreed decree of divorce, order of child support, and final parenting plan concerning the parties' two children, who were six and four years old at the time.

The 2015 child support order established Burns as the obligor parent and set his total monthly transfer amount at $421.16. The child support schedule worksheets adopted by the court showed Burns' net income as $5,255.84 per month and Fujiki's monthly income as $2,736.68. The order noted that the standard calculation was $1,072.48 per month but listed the following as its reasons for deviation from the standard amount: "The children spend(s) a significant amount of time with the parent who is obligated to make a support transfer payment. The deviation does not result in insufficient funds in the receiving parent's household to meet the basic needs of the children. The children does not [sic] receive public assistance."

In October 2018, Fujiki filed a petition to modify the parenting plan and child support order. In the petition, she requested a major change to the parenting schedule because "[t]he children are living in my home now with the other parent's permission." She argued that her requested change affected the amount of child support because she was "asking for a substantial change in the amount of time the children spend with the parent who pays child support." Burns appeared pro se and agreed to the modified schedule in the proposed parenting plan. However, he objected to the request to modify child support and disagreed with the

characterization of the modification as a "major change" because there was "no change in the amount of time the children spend with the parent who pays child support." The court entered the parenting plan as requested on November 16, 2018. Under the 2018 parenting plan, the children were to reside with Burns from Wednesday through Friday every week and every other weekend. Consequently, the children resided with Burns for six out of every fourteen nights and with Fujiki for eight out of every fourteen nights.

On December 12, 2018, Fujiki filed a motion for a temporary order requesting that the court "[o]rder child support according to the Washington state child support schedule" and asking "[f]or an award of reasonable attorney fees on the basis of need and ability to pay." Fujiki asserted that "[c]ontinuing the deviation [from the standard calculation of child support] will perpetuate the hardship that results from the present deviation and will not leave sufficient funds in my household to meet the needs of our children." Fujiki's attorney filed a declaration stating that his hourly rate was $300, he had spent 2.5 hours drafting the motion and related documents, and he anticipated spending an additional 4.5 hours on the matter. He requested an award of $2,100 in attorney fees and $44.98 in costs.

Because the parties had agreed to the entry of the modified parenting plan and the only remaining issues were Fujiki's request to modify child support and request for attorney fees and costs, the parties agreed to a trial by affidavit to dispose of the remaining issues. The parties filed their trial declarations on April 26, 2019. Fujiki asserted that the parties had utilized the "residential credit using formula" to arrive at the downward deviation from the standard child support

payment in the agreed 2015 order. She stated that her "agreement to accept a reduced amount of child support ha[d] been a financial disaster" and resulted in "insufficient funds in my household to meet the basic needs of our children." She asserted that the finding in the 2015 child support order that the downward deviation left her sufficient funds to meet the needs of the children "ha[d] not been true for years," and she and the children "ha[d] not been able to maintain a semblance of the standard of living that we enjoyed prior to the divorce." She stated that she and Burns had agreed that the children should attend school in the Mercer Island district, so she had lived in a one-bedroom apartment on Mercer Island with the two children since the divorce. However, as the children got older, the apartment no longer provided enough space for Fujiki and the children. She relocated to a two-bedroom apartment in Redmond while the petition to modify child support was pending.

Fujiki stated that she had been laid off from her job as an interior designer earlier that month and received $598 per week in unemployment compensation while she searched for a new position. She requested that child support be calculated based on her unemployment income and that the order be retroactive to the date she filed the petition. She submitted two financial declarations, one based on her wages from her prior employment and the other based on her unemployment compensation.[1] Both showed total monthly expenses of $4,933.39. Relative to her net income, the declaration based on her prior wages showed a monthly deficit of $1,068.55, and the declaration based on her

---

[1] These financial declarations are not signed but were filed with Fujiki's signed trial declaration and referenced in the signed document.

unemployment compensation showed a monthly deficit of $2,540.29. Burns argued that the court should deny the request to modify the child support order because Fujiki had not shown a substantial change in circumstances justifying the modification.

The court entered findings that the child support order should be modified because at least two years had passed since the entry of the initial child support order, the parents' income had changed, and the economic table or standards in RCW 26.19 had changed. The court also found that there had been a substantial change in circumstances since the 2015 order was signed because, although the original deviation was not problematic, continued deviation would result in insufficient funds in Fujiki's household to meet the children's needs.

The court found that Fujiki's unemployment was a temporary situation and listed her imputed income as $4,221.11 per month. It noted that Burns' actual income was $6,538.93 per month. The court adopted the child support schedule worksheet that Fujiki had completed based on her wages from prior employment. The worksheet listed the standard calculation of child support for Fujiki as $908.66 and for Burns as $1,409.34. The court found that the monthly child support amount should deviate from the standard calculation because of the children's residential schedule. Burns was ordered to make a total monthly child support payment of $1,159.34 beginning January 1, 2019. This resulted in Burns owing $3,690.90 in back child support. The court ordered the parties to pay proportional shares of expenses for day care, education, and agreed extracurricular activities. The court also awarded Fujiki attorney fees in the amount of $2,415. The court found that

Fujiki had a need for contribution to these fees and costs and Burns had the ability to contribute.

Through counsel, Burns moved for revision of the commissioner's order. Fujiki's counsel filed another declaration stating his hourly rate, estimating that he would spend a total of four hours on the motion for revision issue, and requesting that Fujiki be awarded $1,200 in attorney fees. After a hearing, the court denied the motion for revision and Fujiki's request for additional attorney fees. Burns appealed.

ANALYSIS

A commissioner's orders are subject to revision by a superior court judge. RCW 2.24.050. Any appeal following resolution of a motion for revision is from the superior court's decision, not the commissioner's. Maldonado v. Maldonado, 197 Wn. App. 779, 789, 391 P.3d 546 (2017). However, a denial of a motion for revision constitutes an adoption of the commissioner's decision, and the superior court is not required to enter separate findings and conclusions. Id.

I.    Child Support Order

Burns contends that the superior court erred in entering the 2019 child support order. We review an order modifying child support for an abuse of discretion. In re Marriage of Booth, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). The court abuses its discretion when its decision is based on unreasonable or untenable grounds. In re Marriage of Schnurman, 178 Wn. App. 634, 638, 316 P.3d 514 (2013). A decision based on an erroneous view of the law or incorrect

- 6 -

legal analysis necessarily constitutes an abuse of discretion. Id. "A trial court does not abuse its discretion where the record shows that it considered all the relevant factors and the child support award is not unreasonable under the circumstances." State ex rel. J.V.G. v. Van Guilder, 137 Wn. App. 417, 423, 154 P.3d 243 (2007).

Appellate courts will uphold findings of fact that are supported by substantial evidence. In re Marriage of Stern, 57 Wn. App. 707, 717, 789 P.2d 807 (1990). Substantial evidence exists where the record contains a sufficient quantum of evidence to persuade a fair-minded, rational person of the truth of a declared premise. Id. Substantial evidence may exist to support a finding even if there are other reasonable interpretations of the evidence. Fred Hutchinson Cancer Research Ctr. v. Holman, 107 Wn.2d 693, 713, 732, P.2d 974 (1987). On review, "[w]e will not substitute our judgment for the trial court's, weigh the evidence, or adjudge witness credibility." In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999).

RCW 26.19.100(1) directs that in a proceeding for dissolution of marriage, "after considering all relevant factors but without regard to misconduct, the court shall order either or both parents owing a duty of support to any child of the marriage . . . dependent upon either or both spouses . . . to pay an amount determined under chapter 26.19 RCW." Chapter 26.19 RCW establishes a child support schedule intended to "insure that child support orders are adequate to meet a child's basic needs[,] to provide additional child support commensurate with the parents' income, resources, and standard of living," and to apportion the obligation equitably between the parents. RCW 26.19.001.

The court must determine the presumptive amount of support according to the child support schedule and shall order this standard amount "[u]nless specific reasons for deviation are set forth in the written findings of fact and are supported by the evidence." RCW 26.19.075(2). The governing statute contains a nonexclusive list of considerations justifying deviation from the standard calculation including the children's residential schedule, provided the deviation does not result in insufficient funds to meet the basic needs of the children in the household receiving support; the income of a new spouse, if the remarried parent has requested a deviation for another reason; and children from other relationships to whom the parent owes a duty of support. RCW 26.19.075(1)(a)(i), (d), (e). "Agreement of the parties is not by itself adequate reason for any deviations from the standard calculation." RCW 26.19.075(5).

A party to a child support order may petition for a modification based on a showing of substantially changed circumstances at any time. RCW 26.09.170(5)(a). If two years have passed from the order's entry or last modification, the order may be adjusted without a showing of substantially changed circumstances based on changes in the parents' income or changes in the economic table or standards in chapter 26.19 RCW. RCW 26.09.170(7)(a).

A. Findings of Fact

Burns argues that the findings of fact are not supported by substantial evidence, but does not assign error to any specific findings. The rules of appellate procedure require that parties include a separate assignment of error for each finding of fact that they contend was improperly made, including a reference to the

- 8 -

finding by number. RAP 10.3(g). "The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto." Id. In appropriate cases, we may waive technical violations of this rule when the opening brief makes the nature of the challenge clear. Harris v. Urell, 133 Wn. App. 130, 137, 135 P.3d 530 (2006).

In the argument section of his brief, Burns quotes portions of the following finding under the heading "Change of Circumstances" in the court's order on the petition to modify child support:

> At the time deviation was granted in the original Order of Child Support, the deviation did not result in insufficient funds in the mother's household to meet the needs of the children. Due to rising costs of living and the need for the mother to move from her artificially low cost of housing while living in a one bedroom apartment, continued deviation does result in insufficient funds in the mother's household to meet the needs of the children.

Although he fails to expressly assign error to this finding, the nature of his challenge is sufficiently clear from his argument to allow our review. Burns' brief does not demonstrate a challenge to any of the court's other findings of fact.

When entering the 2015 child support order, the court found that the downward deviation did not result in insufficient funds in Fujiki's household to meet the needs of the children. This finding was never challenged on appeal. Fujiki repeatedly asserted in declarations that her monthly expenses outpaced her income, even after she relocated from Mercer Island to Redmond. We will not substitute our judgment for the trial court's in deciding to credit this evidence. Substantial evidence supports the finding that the deviation did not result in

insufficient funds at the time it was entered but continued deviation would result in insufficient funds in Fujiki's household.

Burns also argues briefly that the findings of fact entered by the court were insufficient because they do not explain how the court calculated the amount of the downward deviation. The court is required by statute to enter written findings of fact with specific reasons for any deviation from the standard calculation of child support. RCW 26.19.075(2), (3). As noted above, the statute provides a nonexclusive list of "[r]easons for deviation from the standard calculation" including sources of income and tax planning, nonrecurring income, debt and high expenses, residential schedule, and children from other relationships. RCW 26.19.075(1). When such reasons are present, "the court shall exercise discretion in considering the extent to which the factors would affect the support obligation." RCW 26.19.075(4).

This statute "gives the trial court discretion to deviate from the basic child support obligation based on the facts of a particular case," and therefore, "a specific formula is neither necessary nor statutorily required to ensure the parents' child support obligation is properly allocated." State ex. rel. M.M.G. v. Graham, 159 Wn.2d 623, 636, 152 P.3d 1005 (2007). A deviation based on the residential schedule remains discretionary and "should focus on the legislature's primary intent to maintain reasonable support for the children in each household." Schnurman, 178 Wn. App. at 641.

Here, the court entered written findings that the residential schedule justified deviation from the standard calculation but continuing the deviation in the

previously ordered amount would result in insufficient funds in Fujiki's household. Once these findings were made, the court made a discretionary determination as to the extent to which those considerations affected the support obligation based on the facts of this case.

In support of his argument, Burns cites State ex rel. Sigler v. Sigler, in which Division Three of this court, after finding that the father should not have been granted a downward deviation, also found that the deviation failed because the court's findings gave no indication of how the decrease was calculated. 85 Wn. App. 329, 338, 932 P.2d 710 (1997). However, in Sigler, there was no indication that the deviation would result in insufficient funds in the obligee parent's household. The calculus here was based on more than simply the children's proportional time with each parent, and the trial court's findings were sufficient to support the deviation.

B. Child Support Modification

1. Modification of Downward Deviation

Burns contends that the trial court was not permitted to modify the downward deviation in child support because his entitlement to the deviation flowed from the residential schedule outlined in the parenting plan and his residential time with the children had not changed. He bases this argument primarily on In re Marriage of Trichak, 72 Wn. App. 21, 863 P.2d 585 (1993). In Trichak, the trial court found in the decree of dissolution that the father was entitled to a pro rata offset in his child support obligation for the Social Security benefits received by the parties' developmentally disabled child. Id. at 22. Neither party

appealed the decree, and the mother brought a petition for modification of child support two years later. Id. Although the court increased the father's child support obligation based on a substantial change of circumstances, it found that the pro rata offset was "the law of the case" and not subject to modification. Id.

On appeal, the mother argued that the offset was not a proper deviation under the child support statute. Id. at 24. We found that she was precluded, under the doctrine of collateral estoppel, from relitigating whether a deviation from the standard calculation for the child's Social Security income was proper. Id. at 23. We noted that "the trial court clearly had the ability to modify the deviation provision" on the basis of a substantial change of circumstances, but a petition for modification of child support was "not the proper forum for relitigating previously decided legal issues that are unrelated to" the needs of children. Id. at 24.

Trichak does not compel the conclusion that the court in this case was prohibited from modifying the amount of the downward deviation based on the children's residential schedule. Unlike Trichak, Fujiki did not argue that the deviation was ordered on an improper basis. She requested a modification based on a substantial change of circumstances that resulted in insufficient funds to meet the children's needs. Even if some downward deviation is the "law of the case" here because the children's residential time with each parent has not changed, the court maintained a downward deviation based on the residential schedule.[2]

---

[2] Burns also cites an unpublished decision of this court in support of his argument that the trial court was not permitted to modify the downward deviation. In re Marriage of Richardson, No. 77900-1-I (Wash. Ct. App. Dec. 24, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/. However, in that case, we explicitly declined to reach the issue of "whether the trial court may, absent a modification to the parenting plan, change the amount of the deviation (without eliminating it) and order a nonzero transfer payment on a motion to modify or adjust child support." Id. at 17. (alteration in original). Richardson does not constrain our analysis here.

Burns also argues that the trial court abused its discretion in ordering "relief that was not explicitly requested by the parties." However, "the court has broad equitable powers in family law matters." In re Marriage of Morris, 176 Wn. App. 893, 903, 309 P.3d 767 (2013). Once a basis for modification of a child support order has been established, the court may modify the original order in any respect. In re Marriage of Scanlon and Witrak, 109 Wn. App. 167, 171, 34 P.3d 877 (2001). The court did not abuse its discretion in modifying the amount of the downward deviation instead of maintaining or eliminating it.

### 2. Amount of Deviation

Burns contends that the trial court failed to consider evidence of increased expenses in his own household and decreased expenses in Fujiki's household stemming from the amount of time the children spend with each parent when setting the amount of the deviation. When determining the amount of a deviation based on the residential schedule,

> the court shall consider evidence concerning the increased expenses to a parent making support transfer payments resulting from the significant amount of time spent with that parent and shall consider the decreased expenses, if any, to the party receiving the support resulting from the significant amount of time the child spends with the parent making the support transfer payment.

RCW 26.19.075(1)(d).

Although the court's order does not include specific findings about the change in expenses to each household based on the residential schedule, the parties' financial obligations were included in the declarations submitted to the court. We presume that the court considered all evidence before it when

- 13 -

fashioning an order. In re Marriage of Kelly, 85 Wn. App. 785, 793, 934 P.2d 1218 (1997). Burns has not shown that the court abused its discretion in setting the amount of the downward deviation in child support.

II.      Award of Attorney Fees and Costs

Burns contends that the court erred in awarding Fujiki attorney fees and costs on the modification action. The court may award reasonable attorney fees and costs to a party for maintaining or defending a proceeding under chapter 26.09 RCW after considering the financial resources of both parties. RCW 26.09.140. The decision to award fees under this statute is within the trial court's discretion, so "[t]he party challenging the award bears the burden of proving that the trial court exercised this discretion in a way that was clearly untenable or manifestly unreasonable." In re Marriage of Knight, 75 Wn. App. 721, 729, 880 P.2d 71 (1994).

The court must balance the needs of the party seeking the fees against the ability of the other party to pay. Id. "In calculating a reasonable amount of fees, the court should consider the following three factors: (1) the factual and legal questions involved; (2) the amount of time necessary for preparation and presentation of the case; and (3) the value and character of the property involved." In re Marriage of Ayyad, 110 Wn. App. 462, 473, 38 P.3d 1033 (2002). The trial court must indicate on the record the method it used to calculate the award. Knight, 75 Wn. App. at 729.

In its final order and findings, the court indicated that Burns should pay $2,415 toward Fujiki's court costs and attorney fees because Fujiki had "the need

for contribution to her attorney fees and costs" and Burns had "the ability to contribute to the same." Although the court appears to have properly exercised its discretion in weighing Fujiki's need for contribution against Burns' ability to pay, the court did not indicate the method used to calculate the award in its written order. Where the court does not indicate how it reached the amount of the attorney fee award on the record, the remedy is vacation of the award and remand to the trial court for reconsideration. See In re Marriage of Sanborn, 55 Wn. App. 124, 130, 777 P.2d 4 (1989). Accordingly, we vacate the award of attorney fees to Fujiki and remand for the trial court to reconsider her request for fees and costs.

III.    Attorney Fees on Appeal

Fujiki requests an award of attorney fees on appeal under RAP 18.1 "on the basis of need and ability to pay." A party may request an award of attorney fees and costs if applicable law provides the right to recover fees and costs on appeal. RAP 18.1(a). The party requesting fees and expenses must do so in the manner specified in the appellate rules. Id. The party must set out its request in a separate section of its opening brief and, "[i]n any action where applicable law mandates consideration of the financial resources of one or more parties regarding an award of attorney fees and expenses, each party must serve upon the other and file a financial affidavit no later than 10 days prior to the date the case is set for oral argument or consideration on the merits." RAP 18.1(b), (c).

On appeal of any proceeding under chapter 26.09 RCW, "the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." RCW

26.09.140. In making this determination, we consider the financial resources of both parties, balancing the needs of one party against the other's ability to pay. Stern, 57 Wn. App. at 720–21. We may also consider the merits of the appeal. Id.

Fujiki set out her request for attorney fees and costs in a separate section of her opening brief to this court. Her brief also stated that she would file a financial affidavit no later than 10 days before the date of consideration of this case. Although Fujiki's financial affidavit was not timely filed, Fujiki requests a waiver of this requirement under RAP 18.8 due to the extenuating circumstances of the novel coronavirus disease (COVID-19) pandemic and the fact that her financial declarations at trial were part of the record on appeal. We may waive or alter the provisions of the appellate rules in order to serve the ends of justice. RAP 18.8(a).

In these unusual circumstances, we find it appropriate to waive the requirements of RAP 18.1(c). The financial declarations in the record establish the significant disparity between the parties' incomes and show Fujiki's monthly budget shortfall. Accordingly, we grant her request for attorney fees on appeal in an amount to be determined by a commissioner of this court.

Remanded for reconsideration of the trial court's award of attorney fees and costs to Fujiki. Otherwise affirmed.

_____

WE CONCUR:

_____     _____
Leach, J.                            Dwyer, J.

- 16 -